OPINION OF THE COURT
Irving Lang, J.
Can a death certificate, in the absence of a physician’s affidavit, provide sufficient medical proof of a causal connection between the alleged medical malpractice and the death of the original plaintiff, so as to permit an amendment of the complaint to include a cause of action for wrongful death?
FACTS AND CONTENTIONS
Robert Rosenberg was admitted to New York University (NYU) Hospital in December 1981, and underwent surgery for infected gangrene of the foot on December 31. He allegedly emerged from the surgery with overwhelming anoxic brain damage. He was completely bedridden, confined to either hospital or home, and required full-time nursing care. A medical malpractice action was commenced by Mr. Rosenberg and his wife against the hospital, the anesthesiologist, Dr. Barry O’Meara, the nurse anesthetist, Susan Frost, and the surgeon, Dr. Thomas Riles, in June 1983. In their original complaint, plaintiffs allege that Mr. Rosenberg’s injury was caused by the *91 negligence of the defendants in the course of the surgery and the administration of the anesthesia. During the pendency of the action, Mr. Rosenberg died. His wife now moves to amend the complaint to include a cause of action for wrongful death.
Defendants NYU Hospital, Dr. O’Meara and Susan Frost have submitted no opposition to the motion. Defendant Thomas Riles does oppose the motion. He contends that plaintiff’s application is legally insufficient due to her failure to submit a physician’s affidavit establishing a causal connection between the death and the alleged malpractice. Defendant claims that in the absence of such affidavit, there is “no evidence that the death of Robert Rosenberg was causally connected to the alleged negligence of the defendants.”
In reply, plaintiff contends that the legal requirement for amending the complaint to include a wrongful death action is specifically supported by the death certificate. The certificate, signed by the certifying physician, Dr. Alvin Greenberg, indicates that the “immediate cause of death was acute renal failure, due to or a consequence of broncho-pneumonia and sepsis, [1] which was in turn due to, or a consequence of post-hypoxic[2] encephalopathy[3] and spastic quadraparesist[4]]”. Thus, plaintiff claims that the requisite causal connection is clearly established by the death certificate since it demonstrates the link between the initial injury (the anoxic brain damage allegedly as a direct result of the 1981 surgery), leading to spastic quadraparesis and a totally bedridden condition, and finally to death from broncho-pneumonia.
LAW
It is well established that leave to amend or supplement a pleading lies within the sound discretion of the trial court. (Harrigan v St. Hilaire, 75 AD2d 698 [3d Dept 1980].) Leave to amend shall be freely given, absent prejudice or surprise of the opposing party. (Blasch v Chrysler Motors Corp., 114 Misc 2d 223, revd 93 AD2d 934 [3d Dept 1983]; CPLR 3025 [b].)
Upon a motion to amend a complaint to include a cause of action for wrongful death, courts have engrafted certain addi *92 tional rules. Specifically, the moving party must submit competent medical proof of a causal connection between the alleged malpractice and the death of the original plaintiff. (Wood v Southside Hosp., 45 AD2d 1052 [2d Dept 1974]; Robbins v Healy, 35 AD2d 850 [2d Dept 1970]; Ortiz v Bono, 101 AD2d 812 [2d Dept 1984].) Some appellate courts have strictly interpreted this standard so as to require the movant to submit a physician’s affidavit which establishes the causal connection. (Vastola v Maer, 48 AD2d 561, affd 39 NY2d 1019; Smith v Heilman, 57 AD2d 566 [2d Dept 1977]; Hollister v Mohawk Val. Gen. Hosp., 43 AD2d 802 [4th Dept 1973]; Florentino v Cobble Hill Nursing Home, 101 AD2d 825 [2d Dept 1984].)
Thus, an interesting dichotomy is presented: on the one hand, courts applaud a liberal stance in exercising discretion to permit the amendment of a pleading; yet, on the other hand, there appears to have evolved a somewhat inflexible rule of mandating submission of a doctor’s affidavit when the amendment involves the addition of a wrongful death action. The question presented is whether competent medical proof of a causal connection must, in all cases, include a physician’s affidavit, or whether other indicia, such as a death certificate, may be presented to satisfy that criteria.
ANALYSIS
With regard to those cases mentioned above which call for a doctor’s affidavit as a condition of amending the complaint, none of them specifically analyze the affidavit requirement in light of the requisite causality standard. However, examination of Vastola v Maer (supra) is enlightening. In Vastóla, plaintiff commenced a negligence action in 1972 on behalf of himself and his son arising out of a car accident which occurred in 1971. Approximately three months after commencement of the action, plaintiff’s son died of leukemia. In 1974, plaintiff moved to amend the complaint so as to assert an action for wrongful death, based upon the death of his son. In support of the motion, plaintiff submitted an affidavit of a physician which stated that due to the accident, the decedent inhaled gasoline for 45 minutes and that his clothing was drenched with gasoline. The physician concluded that such exposure caused hydrocarbon toxicity and that such toxicity was the cause of his death by leukemia. Special Term granted the motion to amend the complaint. The Appellate Division and the Court of Appeals affirmed, holding that Special Term properly exercised its discretion because plaintiff submitted “an affidavit of a physician establishing the causal connection between the death and the occurrence” (48 AD2d, at p 567).
*93 It is apparent that in the Vastola case, the nexus between the accident and the death was somewhat tenuous. Logic would dictate the necessity in such a case, of medical proof, in the form of a doctor’s affidavit, showing a causal relationship between an automobile accident and death by leukemia. In sharp contrast is the instant case, where the sequence of events following the surgery in 1981 inexorably and logically lead to the conclusion that the report on the death certificate of death due to renal failure is causally related to the anoxia (which directly followed the surgery). In my view, the death certificate signed by the certifying physician provides the logical link between the malpractice and the death. To require more in this case would exact form over substance, and would merely serve to further delay resolution of this lawsuit. Indeed, while many courts treat the medical affidavit as a sine qua non for a motion of this type, others consider a doctor’s letter as satisfying the requirement of causality in similar contexts. (Wesley v Bingel, 55 AD2d 1010 [4th Dept 1977] [on a motion to amend a complaint by increasing the ad damnum clause, letters from the attending physician were held to fulfill the same purpose as a medical affidavit].)
In addition, among the factors to be considered in these discretionary motions is the prejudice, if any, which would accrue to the defendant upon the granting of the relief sought. Significantly, defendant has not asserted any prejudice or surprise and this court can envision none. The fact that the decedent underwent surgery and emerged with anoxic brain damage was fully known by the defendant long before plaintiff sought leave to amend the complaint to include a wrongful death action.
In sum, the death certificate and the facts alleged in the pleadings spell out sufficient causality to justify granting the instant motion. It should also be noted that not every death certificate constitutes competent medical proof of causation. But where the death certificate provides the logically compelling link between the death and the original injury, the criteria of competent medical testimony is satisfied.
Accordingly, the motion to amend the complaint to include a cause of action for wrongful death is granted.

. Sepsis is defined as poisoning which is caused by the products of a putreactive process (Borland’s Medical Dictionary, 23d ed).

. Hypoxia is defined as a deficiency of oxygen in inspired air (Borland’s Medical Dictionary, 23d ed).

. Encephalopathy is defined as any degenerative disease of the brain (Borland’s Medical Dictionary, 23d ed).

. Paresis refers to slight or incomplete paralysis (Borland’s Medical Dictionary, 23d ed).