OPINION OF THE COURT
Harold J. Hughes, J.
Defendants Chrysler Motors Corporation and Chrysler Corporation (Chrysler) move for an order granting leave to serve a supplemental answer raising the affirmative defenses that plaintiffs entered into a settlement agreement with codefendant Gary Paone and that any judgment must be reduced by the amount of that settlement or Paone’s apportioned share of liability. Chrysler further seeks an order directing an examination before trial of an agent of Paone’s liability insurance carrier, directing an examination before trial of an agent of Paone’s liability insurance carrier, Travelers Indemnity Company, and for discovery and inspection of the contents of Travelers’ claim file.
The action arises from an automobile collision on November 28, 1975 when a vehicle owned and operated by Gary Paone struck the rear of a station wagon owned and *224 operated by plaintiff Earl Blasch and occupied by other members of his family. After the collision, flames enveloped the Blasch vehicle resulting in the death of Laverne Blasch and personal injuries to the other occupants. As against Chrysler this action proceeds upon a claim that the Blasch vehicle was defectively designed and manufactured.
Prior to the commencement of this action, Earl Blasch had commenced an action against Gary Paone. Paone’s liability insurer, Travelers, advised that the applicable policy limits were $10,000/$20,000 and offered to pay the full policy limits. At that point, E. Stewart Jones was retained as trial counsel and he decided to discontinue the original action and commence a new action in which all of the injured plaintiffs, as well as all of the alleged tortfeasors, would be joined as parties. Mr. Jones advised plaintiffs not to settle the case against Paone in view of section 15-108 of the General Obligations Law which, in the event of settlement, would operate to reduce any recovery against the other defendants by either the amount of the settlement or percentage of culpability attributed by the jury to Paone. Travelers still wished to pay its policy limit, apparently upon the theory that payment thereof would discharge it from further responsibility under its policy, including its duty to defend Paone. The original action was discontinued by stipulation dated September 12, 1977 and a new action was commenced on August 4, 1977 joining Chrysler, Paone and various other defendants. On June 22, 1979 Travelers paid $20,000 to the plaintiffs. Plaintiffs did not execute any release in Paone’s favor, or execute any covenant not to sue, and, in fact, continued the litigation against Paone. The intent of plaintiffs and Travelers is best gleaned from the correspondence exchanged between counsel. On September 2,1977 Travelers’ counsel wrote to Mr. Jones, as well as the personal attorneys of Paone, stating:
“I assume that you have instituted a new lawsuit against Gary Paone, naming Earl Blasch among other plaintiffs. Taking another wild guess, I would also assume that this is for the purpose of obtaining an equitable apportionment of the limited policy proceeds among the several injured *225 persons. I further assume that Mr. Scinta wishes to appear as attorney of record for Mr. Paone in the lawsuit, and perforce in all litigation, since he is proposing a discontinuance of the original lawsuit. I have not seen the full title of the new lawsuit, so I cannot comment with any certainty on that.
“Since the full policy limits of $20,000 have long since been offered, I am sure that The Travelers Indemnity Company would not object to Mr. Scinta’s representing Gary Paone as attorney of record for all purposes. If this is agreeable to all parties, I would propose that Mr. Jones forward a Stipulation discontinuing the March 17, 1976 action, and that Mr. Scinta remain as attorney of record for the defendant in the new lawsuit, in which he has apparently served a notice of appearance. May I hear from you in the near future concerning this proposal?”
On September 15, Mr. Jones wrote to Travelers’ counsel as follows: “In view of the pendency of the present action on behalf of Mr. Blasch and his entire family and the desires expressed in letters received from you and Mr. Scinta I will discontinue the earlier action instituted solely on behalf of Mr. Blasch replacing it with the present action brought on his behalf and the behalf of his family. I will also serve a copy of the discontinuance with the Supreme Court Clerk so that the case will be removed from the calendar. This is all done of course without prejudice to Mr. Blasch’s recently instituted and presently pending action. Enclosed is the proposed discontinuance.”
On September 19, 1977 Travelers’ counsel wrote to Mr. Jones, with a copy to Paone’s personal attorneys, as follows: “It is my understanding that the firm of Scinta, Rinaldo & Sandler, Esqs. have appeared on behalf of Mr. Paone. Of course, the full policy limits of $20,000 have long since been offered, and Mr. Scinta apparently wishes to defend Gary Paone in this matter. By copy of this letter, I am requesting that Mr. Scinta merely advise The Travelers Indemnity Company as to the ultimate disposition of this matter, at which time the proceeds of the policy will be forthcoming.”
During the pendency of the present action Chrysler’s counsel became aware of the payment by Travelers and *226 inquired as to the nature of the payment and received the following explanation from Travelers’ counsel by letter dated May 19, 1980:
“This action was originally commenced against Gary J. Paone on behalf of Earl B. Blasch alone. The Travelers Indemnity Company immediately advised the plaintiff’s attorney that there was a 10/20 policy, and that the policy limits were of course immediately offered. However, since Mr. Blasch was the only plaintiff on behalf of whom suit had been commenced at the time, it was decided to discontinue his action, and to recommence an action on behalf of all of the injured plaintiffs and decedent estates. I believe that the original discontinuance of Mr. Blasch’s action is the matter referred to in your letter of May 16.
“In addition, the plaintiffs deemed it inadvisable to settle and release as against Mr. Paone for the policy limits of $20,000., no doubt in view of Section 15-108 of the General Obligations Law. As a result, I believe that the $20,000 policy limits were disbursed to all of the plaintiffs as an advance payment against any judgment which would subsequently be rendered. This had the effect of discharging the carrier’s obligation to defend, and it is assumed that the defense of Mr. Paone in any subsequent action recommenced on behalf of all injured plaintiffs, would have been undertaken by his personal attorneys, Perla & Parlato, Esqs., 506 Brisbane Building, Buffalo, NY 14203.
“For the reasons stated above, I do not believe that any general releases were exchanged at the time this office or The Travelers was handling the file. As stated above, the stipulation of discontinuance signed by behalf of Mr. Blasch evidenced only a discontinuance not on the merits, and was prefatory to a new lawsuit on behalf of all injured parties.”
Almost two years after receiving the letter, Chrysler made this motion contending that the payment by Travelers constituted a settlement of plaintiffs’ claims against Paone and that it was entitled to plead such payment as an affirmative defense under section 15-108 of the General Obligations Law and have further discovery with respect to the payment. Plaintiffs oppose the motion on the argument of gross laches because of the long delay in making *227 the motion, and that there has been no release or covenant not to sue with respect to plaintiffs’ claims against Paone so that the proposed affirmative defense based upon section 15-108 of the General Obligations Law is deficient as a matter of law. Subdivision (a) of section 15-108 of the General Obligations Law provides: “Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release of the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor’s equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.”
Addressing the application for permission to serve a proposed amended answer containing new affirmative defenses, the rule is, “When matter to be added by an amended pleading is palpably insufficient, the court need not exercise its discretion to allow the amendment, and leave to amend should be denied” (Winn v Bratti Assoc., 80 Misc 2d 756, 758; see, also, Lost Lots Assoc. v Bruyn, 68 AD2d 1006). The court must decide if the proposed affirmative defenses lack legal merit which requires a determination as to whether the discontinuance of the original action against Paone and the subsequent payment of Paone’s policy by Travelers could, under any circumstance, be construed as a release or covenant not to sue within the meaning of section 15-108 of the General Obligations Law. The terms “release” and “covenant not to sue” are defined in Colton v New York Hosp. (53-AD2d 588, 589) as follows: “[W]e observe that in general terms a covenant not to sue is an agreement by one having a present right of action against another not to sue to enforce such right. A covenant not to sue is not a release since it is not a present abandonment of a right or claim, but merely an agreement not to enforce an existing cause of action. Such distinction *228 although technical is nevertheless clear. Thus, the party possessing the right of action is not precluded thereby from thereafter bringing suit; however, he may be compelled to respond in damages for breach of the covenant. In the instant case it does not clearly appear at present as to whether or not anything other than a possible right of action existed in favor of plaintiffs at the time of execution of the agreement. On the other hand, an agreement purporting to release another from the consequences of his own wrong will not be so construed unless the document is unequivocal and clear in its language and construction. Such contracts are not favored since they purport to relieve persons from results flowing from their own negligent and improper conduct. Such an agreement will be closely scrutinized and strictly construed * * * and it will not be assumed that one is relieved from the obligation to exercise care commensurate with the circumstances unless it clearly appears from the language of the instrument or the conduct and expressions of the parties that such was intended.”
At times, the circumstances surrounding the execution of a purported release raise a factual question with respect to the intent of the parties (Johnson v Thruway Speedways, 63 AD2d 204). In other cases, the actions and language of the parties is so clear that the court can determine as a matter of law whether the parties have entered into a release or covenant not to sue (Oxford Commercial Corp. v Landau, 12 NY2d 362; New York Inst. of Technology v Ruckgaber, 65 Misc 2d 241, 243). A review of this record establishes beyond legitimate argument that no release or covenant not to sue has been given by plaintiffs to Paone.
Plaintiffs’ trial counsel views the payment as a voluntary advance payment by Paone’s liability insurer against any judgment which might subsequently be rendered (see Effect of Advance Payment by Tortfeasor’s Liability Insurer to Injured Claimant, Ann., 25 ALR3d 1091). Travelers’ counsel views the payment as the total discharge of all of Travelers’ obligations to Paone under its policy, including the duty to defend (see Liability Insurer’s Duty to Defend Action Against an Insured After Insurer’s Full Performance of Its Payment Obligations Under Policy, *229 Ann., 27 ALR3d 1057). In that regard, the duty of an insurer to defend is separate and greater than the duty to pay (Cordial Greens Country Club v Aetna Cas. & Sur. Co., 41 NY2d 996) and the policy language itself will have to be examined to determine if Travelers’ duty to defend terminated with its payment of the policy limits (American Employers Ins. Co. v Goble Aircraft Specialties, 205 Misc 1066, mot to withdraw app granted 1 AD2d 1008). If it is determined that that is not the case, then Travelers could be responsible to Paone for breach of contract (Gordon v Nationwide Mut. Ins. Co., 30 NY2d 427, cert den 410 US 931). Of course, the court could find that the $20,000 payment was a voluntary “gift” as Judge Staley, in effect, found a $50,000 payment to be in Codling v Paglia (38 AD2d 154, 161-162, affd 32 NY2d 330). Whatever the payment is ultimately determined to be, it is clear that there has been no release or covenant not to sue Paone and he remains a defendant in this action. The affirmative defenses proposed by Chrysler lack legal merit and the application for permission to interpose them shall be denied.
Since there is no issue of release in the action, testimony with respect thereto will not be relevant (Shaw v Webber, 79 Hun 307, 309-310, affd 151 NY 655), and there is no need for disclosure with respect thereto (CPLR 3101, subd [a]). In any event, plaintiffs have responded to Chrysler’s supplemental interrogatories relating to the payment made on behalf of Paone, and Chrysler has made no showing of special circumstances warranting the examination of a nonparty witness (CPLR 3101, subd [a], par 4; 3130).
The motion of defendants Chrysler Motors Corporation and Chrysler Corporation for an order directing an examination before trial of an agent of Travelers Indemnity Company; directing the Travelers Indemnity Company to produce at the examination its entire claims file No. 002 PP JOO 3313 F; and granting leave to interpose a supplemental pleading containing fourth, fifth and sixth affirmative defenses to plaintiffs’ complaint, predicated upon section 15-108 of the General Obligations Law, shall be denied, without costs.