### NATIONAL GRANGE MUTUAL INSURANCE COMPANY, Plaintiff,

v.

### CONTINENTAL CASUALTY INSURANCE COMPANY, Beaver Smelting and Refining Corp., Woodbourne Mining, Smelting and Refining Corp., Arthur Rosenshein, Isadore Rosenshein, Charlotte Rosenshein, and Doe: (Defendants 1–10, Inclusive), Defendants.

### No. 85 Civ. 5783.

United States District Court, S.D. New York.

Dec. 31, 1986.

Sheft, Wright & Sweeney, New York City, for plaintiff; Norman J. Golub, Peter I. Sheft, J. Bradley Stansfield, Jr., of counsel.

Whiteman Osterman & Hanna, Albany, N.Y., for defendants Beaver Smelting and Refining Corp., Woodbourne Mining, Smelting and Refining Corp., Arthur Rosenshein, Isadore Rosenshein and Charlotte Rosenshein; Philip H. Gitlen, Philip H. Dixon, Lisa K. Kill, of counsel.

Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for defendant CNA Ins. Companies, sued herein as Continental Cas. Ins. Co.; Jeffrey Silberfeld, John L. Rivkin, Alan S. Rutkin, Lawrence A. Levy, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This litigation centers about the obligation of two insurance companies under their respective policies issued to an insured and arising by reason of an action instituted against the insured by the State of New York.

In December 1984, the State of New York commenced an action in this Court against the Beaver Smelting and Refining Corp., Woodbourne Mining, Smelting and Refining Corp. and its principal stockholders and officers ("Beaver Defendants or Insureds") pursuant to the Comprehensive Environmental Response, Compensation and Liability Act,[1] state environmental law and the common law of public nuisance and restitution, ("the underlying" or "Superfund" action). The State complaint alleges that the Beaver defendants, who operate a business which melts down and reclaims scrap metals such as lead, copper and aluminum, in the Town of Fallsburg, New York, have from 1970 to about 1981 deposited large quantities of ash, a by-product of the smelting and refining process, at various places on the plant site and that said ash constitutes a hazardous substance. The complaint further alleges that since December 1982 the defendants knew or should have known that the ash generated by the defendants and dumped on the site contained hazardous substances and constituted hazardous waste; that the manner of disposing of these wastes has resulted in their release to the environment; and that adequate measures had not been taken to

---

1. 42 U.S.C. § 9601, et seq.

prevent such release. The State seeks to recover its response costs, damages for injury to its natural resources due to the alleged violation of state environmental law and a mandatory injunction that the Beaver defendants abate the nuisance and pay penalties of $25,000 per day for each day of statutory violation.

The Beaver defendants had comprehensive general liability insurance coverage ("comprehensive") and umbrella excess third-party liability insurance ("umbrella") through two insurance companies: National Grange Mutual Insurance Company ("NGM") and CNA Insurance Companies ("CNA"). Various comprehensive general liability policies were in effect during the period of 1967 to 1984. The Beaver defendants asked both NGM and CNA companies to defend the insureds in the State's lawsuit; initially, both companies refused. Thereupon, in July 1985, NGM commenced the instant action against the insureds, and also named CNA as a defendant. NGM sued for a declaratory judgment that it was not obligated to provide a defense to the Beaver defendants. CNA counterclaimed against NGM and cross-claimed against the Beavers for a declaratory judgment that it was not liable to defend. The Beaver defendants counterclaimed against NGM and cross-claimed against CNA for a declaratory judgment that, indeed, both were obligated to defend and requested reimbursement for legal expenses already incurred and to be incurred in resisting the State's action. During the pendency of the partial summary judgment motions, referred to hereafter, NGM shifted its position. NGM entered into a stipulation with the Beaver defendants under which it acknowledged that it was liable to defend the Superfund action under the policies issued by it to the Beaver defendants from February 1970 to February 1976, and it further agreed to pay their legal costs already incurred and

to be incurred in that defense; however, NGM adheres to its original position that it is not obligated to indemnify the insureds in the event the State prevails in its action.

The insured and the insurers each moved for partial summary judgment to sustain their asserted positions. NGM urges that CNA is also obligated under its policies (substantially identical to those issued by NGM) to defend the Beaver defendants and asks that (1) the Court direct CNA to reimburse NGM for its pro rata share of the amount NGM has already reimbursed the Beaver defendants and (2) for a declaratory judgment that CNA pay pro rata any further fees incurred in the defense of the Beavers in the Superfund action. The Beavers' initial motion for partial summary judgment sought a declaration that NGM and CNA are jointly and severally liable to provide a defense to the State action and for legal fees and expenses incurred and to be incurred.

■ Analysis starts with identification of the issue presented by the respective motions and cross-motions of the parties. The issue at this stage of the litigation is whether CNA has a duty to defend the Beavers in the underlying State action. All parties agree that in this diversity action New York law applies since the Beaver defendants are New York State residents, the property that is the subject of the State's claims is located in New York State and the policies were issued there. Under the applicable law it is crystal clear that the insurer's duty to defend is separate and distinct from the duty to indemnify. The duty to defend is contractual and one that is heavier and broader than the duty to indemnify.[2] The obligation to defend has been deemed "litigation insurance" as well as "liability insurance."[3] Thus the insurer is required to provide a defense to any action, however groundless, in which there

---

**2.** *Servidone Constr. Corp. v. Security Ins. Co. of Hartford,* 64 N.Y.2d 419, 423–24, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441, 444–45 (1985); *Seaboard Sur. Co. v. Gillette Co.,* 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 875–76, 476 N.E.2d 272, 274–75 (1984); *Int'l Paper Co. v. Continental Cas. Co.,* 35 N.Y.2d 322, 326, 361 N.Y.S.2d 873, 876, 320 N.E.2d 619, 621 (1974).

**3.** *Schwamb v. Fireman's Ins. Co. of Newark,* 41 N.Y.2d 947, 949, 394 N.Y.S.2d 632, 633, 363 N.E.2d 356, 357 (1977); *Int'l Paper Co. v. Continental Cas. Co.,* 35 N.Y.2d 322, 326, 361 N.Y.S.2d 873, 876, 320 N.E.2d 619, 621 (1974).

exists any possibility that the insured might be held liable for damages where facts are alleged within the coverage of the policy.[4]

■ The determination of the duty to defend is a question of law answered by comparing the allegations of the complaint (underlying action) to the provisions of the policy.[5] And as long as the claim asserted against the insured may rationally be said to fall within the policy coverage, whatever may be the limits of the insurers' responsibility to pay, it is obligated to defend.[6] Even if some of the allegations of the underlying complaint are clearly outside the scope of the coverage contained in the policy, the insurer is obligated to defend unless the allegations as a whole preclude coverage.[7]

■ Other applicable principles to be considered under New York law are that whenever the insurer wishes to exclude certain coverage from its policy obligations, it must do so "in clear and unmistakable" language.[8] Any such exclusions or exceptions from policy coverage "must be specific and clear in order to be enforced. They are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction."[9] It is a cardinal rule under New York law that where the terms of an insurance policy are ambiguous or are subject to more than one reasonable construction, the policy must be construed most favorably to the insured and against the insurer.[10]

■ Finally, the burden is upon the insurer to prove that the exclusion from liability coverage applies;[11] the insurer is entitled to prevail on its motion only if it can be concluded as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify the Beavers under any provision of the policy.[12]

Against that background of law we consider whether CNA, on its cross-motions for a declaratory judgment, has sustained its burden and is exonerated from its duty to defend the Beaver defendants. CNA, in addition to "comprehensive" and "umbrella" policies had also issued a third type of policy, environmental impairment liability insurance ("EIL"). Since there are differences between the comprehensive and umbrella policies on the one hand, and the EIL policy on the other hand, they are discussed separately.

## COMPREHENSIVE AND UMBRELLA POLICIES

CNA's comprehensive liability insurance policies provide:

The company will pay on behalf of the insured all sums which the insured shall

---

4. *Servidone Constr. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 142, 477 N.E.2d 441, 444 (1985); *Utica Mut. Ins. Co. v. Cherry*, 38 N.Y.2d 735, 737, 381 N.Y.S.2d 40, 343 N.E.2d 758 (1975); *Goldberg v. Lumber Mut. Cas. Ins. Co.*, 297 N.Y. 148, 151, 154, 77 N.E.2d 131 (1948).

5. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 875–76, 476 N.E.2d 272, 274–75 (1984).

6. *Schwamb v. Fireman's Ins. Co. of Newark*, 41 N.Y.2d 947, 949, 394 N.Y.S.2d 632, 633, 363 N.E.2d 356, 357 (1977).

7. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984); *Utica Mut. Ins. Co. v. Cherry*, 38 N.Y.2d 735, 381 N.Y.S.2d 40, 343 N.E.2d 758 (1975).

8. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984);

see also *Taylor v. United States Cas. Co.*, 269 N.Y. 360, 363, 199 N.E. 620 (1936).

9. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984) (quoting *Kratzenstein v. Western Assur. Co.*, 116 N.Y. 54, 59, 22 N.E. 221 (1889)).

10. *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 361, 357 N.Y.S.2d 705, 708, 314 N.E.2d 37, 39 (1974); see also *Niagara County v. Utica Mut. Ins. Co.*, 80 A.D.2d 415, 439 N.Y.S.2d 538, 541 (4th Dep't 1981); *Allstate Ins. Co. v. Klock Oil Co.*, 73 A.D.2d 486, 426 N.Y.S.2d 603 (4th Dep't 1980).

11. *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 876, 476 N.E.2d 272, 275 (1984).

12. *Spoor-Lasher Co. v. Aetna Cas. & Sur. Co.*, 39 N.Y.2d 875, 876, 386 N.Y.S.2d 221, 222, 352 N.E.2d 139, 140 (1976).

become legally obligated to pay as damages because of ...

B. property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent....[13]

The policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."[14]

The exclusion from coverage is contained in both the comprehensive and the umbrella insurance policies and it provides:

This insurance does not apply:

(f) to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.*[15] (emphasis supplied.)

The respective and differing positions of the Beavers and NGM on the one side, and CNA on the other, on the issue of CNA's duty to defend center about the two provisions of the policies quoted at length above: (1) that CNA is obligated to indemnify and defend the insureds in all suits for damages "to which this insurance applies, caused by *an occurrence*...." (emphasis supplied), and (2) the pollution exclusion clause which exonerates CNA from this coverage when the damage is due to specified pollutant causes, except when the pollutant is "sudden and accidental."

CNA, to sustain its burden that there is no possible factual or legal basis on which it might eventually be obligated to indemnify the Beavers under the policies, and hence no duty to defend the State action, refers to the allegations of the State's complaint that:

[A]t all times from about 1970 to 1981, [Beaver] disposed of its waste ash by removing the ash from its furnaces and dumping it on piles onto the surface of the ground in at least three discreet (sic) locations on the site;[16]

that it was "the policy and practice" to use the Beaver site "as a dumping ground for the ash generated by [Beaver's] business operations,"[17] and finally, the allegation in paragraph 21, that:

At all times since December, 1982, the defendants knew or should have known that the ash generated by [Beaver] had dumped, as aforesaid, on the site contained hazardous substances and constituted hazardous waste, that their manner of disposing of these wastes had resulted in the release of such wastes to the environment, and that adequate measures had not been taken to prevent such release.

Based upon these allegations, CNA advances a twofold argument that it is relieved of defending the Beavers in the State action: (1) that the damage claimed did not involve "an occurrence" or "property damage;" and (2) that the damage was caused by the dumping or discharge of ash on the site, that this ash was a hazardous waste and a pollutant, and that said discharge was not "sudden and accidental" so that the exception to the exclusion clause is not applicable. However, CNA now concedes, for the purpose of resolving the duty to defend issue, "that genuine issues of material facts exist concerning whether the instant scenario involves an occurrence or property damage."[18]

---

**13.** *See* CNA Exhibit L.

**14.** *Id.*

**15.** *Id.*

**16.** Complaint, para. 16.

**17.** *Id.* at para. 19.

**18.** CNA Memorandum, May 8, 1986, at 24–25.

Thus we turn to CNA's remaining contention that it is not liable for coverage of the insured's loss and is relieved of a duty to defend by reason of the pollutant exclusion provision. This provision incorporates in haec verba a provision of the New York State Insurance Law [19] which was intended to strengthen the State's strict environmental protection policy. In support of its position, CNA cites a number of cases from other state jurisdictions [20] which admittedly, upon their facts, differ from those of the instant case. Those cases hold that where the insured was engaged in a regular business activity as a result of which a pollutant was discharged, that such activity came within the pollution exclusion clause and that the discharge did not come within the "sudden and accidental" exception to that clause; hence the occurrence was not covered under the policy and the insured was not required to defend. Some of these cases emphasize that the complaints in the underlying actions did not allege, expressly or impliedly, that the release of the pollutant was sudden or accidental, and others considered but rejected a contention here advanced by the Beavers that the exclusion was not applicable because the insured did not intend to cause the resultant injury.

The defendant also cites several New York decisions,[21] which again involve differing fact situations from the instant case, but which CNA contends recognize that the pollution exclusion clause bars coverage of commercial or industrial enterprises that commit environmental pollution.[22] This contention is disputed by the Beavers, who urge they are factually inapposite to this case, and that the pollution exclusion only applies if the insured intended and expected the resultant damage. Both cases cited by CNA, *Autotronic Systems, Inc. v. Aetna Life & Casualty Company* [23] and *Niagara County v. Utica Mutual Insurance Company*,[24] involve the question of whether the pollution exclusion clause applies only to the actual polluter; they do not address the issue here, which involves the interpretation and application of the phrase "sudden and accidental" to the allegations contained in the State's complaint. Therefore, these cases add nothing to the analysis that is central to the issue in this case.

■ Moreover, without passing upon the correctness of the holdings of other state jurisdictions cited by CNA, they do not control here. Under *Erie v. Tompkins*,[25] this Court, in this diversity action, is bound to apply the substantive law of New York State. In *Allstate Insurance Company v. Klock Oil Company*,[26] the Appellate Division, Fourth Department, one of the State's highest intermediate courts, has considered the application of the precise clause here at issue under a factual pattern substantially akin to that in the instant case. There the insured had installed and maintained a gasoline storage tank which leaked gasoline on the adjoining property over a three-year period. The adjacent landowner sued the insured, owner of the storage tank, based upon a defective condition due to negligent insulation and maintenance of the tank, and sought damages caused by percolation of gasoline through the soil as a result of the leakage. The insurance company declined

19. N.Y.Ins.Law § 46, subds. 13 and 14.

20. *See e.g., Great Lakes Container Corp. v. National Union Fire Ins. Co.,* 727 F.2d 30 (1st Cir. 1984); *American States Ins. Co. v. Maryland Cas. Co.,* 587 F.Supp. 1549 (E.D.Mich.1984); *Transamerica Ins. Co. v. Sunnes,* 77 Or.App. 136, 711 P.2d 212 (1985); *City of Milwaukee v. Allied Smelting Corp.,* 117 Wis.2d 377, 344 N.W.2d 523 (Ct.App.1983); *Barmet of Indiana, Inc. v. Security Ins. Group,* 425 N.E.2d 201 (Ind.App.1981).

21. *Autotronic Systems, Inc. v. Aetna Life & Cas. Co.,* 89 A.D.2d 401, 456 N.Y.S.2d 504 (3d Dep't 1982); *Niagara County v. Utica Mut. Ins. Co.,* 80 A.D.2d 415, 439 N.Y.S.2d 538 (4th Dep't 1981).

22. CNA Memorandum, April 29, 1986, at 13–14.

23. 89 A.D.2d 401, 456 N.Y.S.2d 504 (3d Dep't 1982).

24. 80 A.D.2d 415, 439 N.Y.S.2d 538 (4th Dep't 1981).

25. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

26. 73 A.D.2d 486, 426 N.Y.S.2d 603 (4th Dep't 1980).

to defend the insured. The Court recognized the pollution exclusion provision as a statutorily mandated reflection of New York's public policy to encourage a clean environment by eliminating the opportunity for industry to spread the risk of loss it causes by pollution.[27] Yet the *Klock* Court held that "Public policy does not forbid enforcement of the insurance contract, however, and [the insurer] has the burden of proving its entitlement to the exclusion."[28] The Appellate Division, addressing itself to the phrase "sudden and accidental," held that whether or not a certain result is accidental is to be viewed from the perspective of the insured and was to be given its ordinary and popular meaning in the business liability insurance area. Specifically, the Court held:

If there was no intent to cause harm then any injury resulting from ordinary negligence is considered to be accidental.

and that

[T]he negligent installation or maintenance of the storage tank could result in an accidental discharge or escape of gasoline which would be both 'sudden and accidental' though undetected for a substantial period of time. Also the word 'sudden' as used in liability insurance need not be limited to an instantaneous happening. The term 'sudden and accidental' must be construed in its relevant context. The relevant context to be considered is the fact that it is a term employed by an insurer in the contract and should be given the construction most favorable to the insured. Thus, regardless of the initial intent or lack thereof as it relates to causation, or the period of time involved, if the resulting damage could be viewed as unintended by the factfinder, the total situation could be found to constitute an accident and therefore within the coverage afforded by [the

insurer] in the comprehensive general liability insurance policy issued to [the insured].[29]

Finally, the Court concluded:

'[w]e cannot think that, given the economic and factual setting in which these policies were written, an ordinary businessman in applying for insurance and reading the language of these policies when submitted, would not have thought himself covered against precisely the damage claims now asserted.'[30] Accordingly [the insurer] may not avoid its duty to defend as well as to indemnify.[31]

Another case decided by the same Fourth Department Appellate Division highlights the deference which the New York courts afford insureds when determining whether application of the exclusion provision is warranted. In this case, the Court noted that:

[I]t is customary to view the casualty from the perspective of the insured to determine whether it was 'unexpected, unusual and unforeseen.' The exclusionary clause when interpreted most favorably to the insured presents ambiguities due to the wording of the phrase *'if such discharge, dispersal, release or escape is sudden and accidental.*

The word 'discharge' clearly refers to the original release of toxic chemicals, an intentional act [in this case]. However, the word 'dispersal' may refer to a secondary dissemination after the original release. Thus, when construing the above phrase in a light most favorable to the insured, the dispersal ... of the spray to the ... property may have been sudden, unexpected, unusual and unforeseen....

Inasmuch as the language of the exclusion is not free from ambiguity, the question of coverage and the extent thereof should not be determined without affording the parties the opportunity to present the proper evidence at a plenary trial.[32]

27. *Id.* 426 N.Y.S.2d at 604.

28. *Id.* (citations omitted).

29. *Id.,* 426 N.Y.S.2d at 605 (citations omitted).

30. *Id.* (quoting *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.,* 34 N.Y.2d 356, 361, 357 N.Y.S.2d 705, 708, 314 N.E.2d 37, 39 (1974)).

31. *Id.* (citations omitted).

32. *Farm Family Mut. Ins. Co. v. Bagley,* 64 A.D.2d 1014, 409 N.Y.S.2d 294, 295–96 (4th Dep't 1978) (citations omitted).

The Beavers assert that they considered the ash to be innocuous material; that they never knowingly or intentionally released any hazardous material into the environment; and that they never intended nor expected to cause any damage to the environment. To give support to this contention, their Local Rule 3(g) statement refers to the Superfund complaint allegation that *since* December 1982 the defendants knew, or should have known, that the ash generated on the site was both a hazardous substance and waste and that it resulted in the release of hazardous material to the environment; accordingly, they contend that by this allegation, the State inferentially admits that *prior* to December 1982 the Beavers did not know, nor should they have known, that the ash was a hazardous or pollutant substance.

■ CNA, apparently recognizing the sweep of *Klock* and *Bagley*, contends that those rulings confuse the pollution exclusion with the definition of an occurrence and hence were incorrectly decided; it cites an Oregon decision [33] to support its claim of error by the New York courts. However, the ruling by the New York Appellate Division is entitled to deferential consideration by this Court. Indeed, the Appellate Division ruling in *Klock* " 'is a datum for ascertaining state law which is not to be disregarded by a federal court *unless it is convinced by other persuasive data that the highest court of the State would decide otherwise.*' " [34] A reading of recent rulings by the New York State Court of Appeals does not indicate it would decide contrary to the Appellate Division ruling; to the contrary, the cases, while not definitive, suggest holding insurance companies strictly to their obligation to defend absent proof that there is no possible basis in law or fact that would exclude liability under

the policy.[35] Moreover, the Court has indicated a continued strong policy in favor of construing the language of insurance contracts in favor of the insured.[36] The Court holds that: (1) based upon the economic and factual setting in which these policies were written; (2) that the insureds paid premiums over the more than eleven year period described in the State's complaint; and (3) that during that time span both the State and the insurers made periodic inspection of the insured property without suggesting to the insured the existence of any pollutant problem, the Beavers, as average businessmen, would have thought themselves insured against the claims now asserted in the State's action. Accordingly, the Beaver defendants are entitled to a declaratory judgment that CNA, as is NGM, is required to defend them in the State's Superfund action under the comprehensive liability and umbrella insurance policies.

## THE EIL POLICY

■ CNA also issued to the Beavers a third type of insurance policy called environmental impairment liability insurance. This type of policy differed substantially from the comprehensive and umbrella coverage. It did not contain a pollution exclusion clause, and it obligated CNA to indemnify the Beavers for losses caused by pollution damage even if they are not sudden and accidental. "Loss" was defined to include "cost, charges and expenses incurred in the investigation ... or defense of claims for such [environmental] damages...." The policy did not expressly, as in the instance of the other policies, obligate CNA to defend the Beavers. It provided that "The company shall have the right but not the duty to designate legal

---

**33.** *Transamerica Ins. Co. v. Sunnes*, 77 Ore.App. 136, 711 P.2d 212 (1985).

**34.** *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967) (quoting *West v. A.T. & T. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)).

**35.** *See Servidone Constr. Corp. v. Security Ins. Co.*, 64 N.Y.2d 419, 424, 488 N.Y.S.2d 139, 142,

477 N.E.2d 441, 444 (1985); *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984).

**36.** *See Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 361, 357 N.Y.S.2d 705, 708, 314 N.E.2d 37, 39 (1974); *Sincoff v. Liberty Mut. Fire Ins. Co.*, 11 N.Y.2d 386, 390, 230 N.Y.S.2d 13, 16, 183 N.E.2d 899, 901 (1962).

counsel to associate in the investigation of the claims and the defense of suits." Thus, while it was within CNA's discretion to associate itself with the actual defense of the suits, it was not obligated to do so. Accordingly, CNA, in the instance of this policy, is entitled to declaratory judgment that it is not required to defend thereunder. The issue of CNA's duty to indemnify the Beaver defendants for the "costs, charges and expenses" incurred in the defense of the State's claims is reserved until determination of the State's Superfund action.

We next consider the Beaver's motion, that both insurers are jointly and severally obligated to pay for defense costs in the suit by New York State. The movants seek reimbursement of legal fees paid to date and a declaratory judgment that CNA is liable for any further fees incurred in the defense of that action. The Beavers also seek the balance of legal expenses incurred to date for which they were not reimbursed by NGM. The latter seeks pro rata payment of the amounts already paid to the Beavers and a declaratory judgment that CNA is obligated to pay, pro rata, further fees expended in the defense of the Beavers.

■ CNA argues that if the Court should find that it is obligated to provide a defense, the obligation is not joint and several with NGM, as the Beavers assert, but that each insurer is obligated to contribute, pro rata, in proportion to their respective undertaking toward legal fees and other expenses of litigation. This appears to be correct under New York law.[37]

Accordingly, the respective motions of the Beavers and NGM are granted to the extent that CNA is found liable to pay pro rata, with NGM, the legal expenses incurred to date in the Beavers' defense of the Superfund action, and thereafter to pay pro rata to the Beavers its share of the future legal expenses required in the defense of the Superfund action.

## THE MOTION BY CNA FOR A DEFAULT JUDGMENT AGAINST THE BEAVERS

CNA also moves for a default judgment against the Beaver defendants based on their failure to file a timely answer to CNA's cross-claims. The Beaver defendants cross-move to vacate the entry of default.

On September 30, 1985, CNA cross-claimed against the Beavers for a declaratory judgment that CNA was not obligated to defend them. No answer was served by the Beavers to this claim until December 27, 1985, which was beyond the twenty-day period that a party has to serve an answer to a complaint under Rule 12(a) of the Federal Rules of Civil Procedure. Counsel for the Beavers state that the default resulted solely from a misunderstanding between two attorneys in the office of the Beavers' counsel whereby each assumed that the other had served the answer, which had already been prepared in response to CNA's cross-claims.[38]

■ One can only express surprise that this motion was made by CNA with the prospect that it would be granted. It is beyond peradventure that the Beavers' failure to comply with the twenty-day requirement under Rule 12(a) was clearly due to misunderstanding, inadvertence and excusable neglect; that it was not willful or intentional. Moreover, there can be no valid basis for a claim of prejudice by CNA. In light of the meritorious claim of the Beavers, the lack of willfulness in their failure to respond in a timely fashion and the absence of prejudice to CNA, it would be manifestly unjust to grant CNA's motion for default.[39] Upon the facts here presented, to deny the Beaver defendants

**37.** *Federal Ins. Co. v. Atlantic Nat'l Ins. Co.,* 25 N.Y.2d 71, 78–79, 302 N.Y.S.2d 769, 774, 250 N.E.2d 193, 196 (1969); *Jefferson Ins. Co. of New York v. Glen Falls Ins. Co.,* 88 A.D.2d 925, 926, 450 N.Y.S.2d 888, 890 (2d Dep't 1982); *Atlantic Mut. Ins. Co. v. Atlantic Nat'l Ins. Co.,* 38 A.D.2d 517, 518, 326 N.Y.S.2d 438–39 (1st Dep't 1971),

*aff'd,* 33 N.Y.2d 817, 350 N.Y.S.2d 909, 305 N.E.2d 917 (1973).

**38.** Kill Aff., paras. 14–16.

**39.** *See Marziliano v. Heckler,* 728 F.2d 151, 156 (2d Cir.1984).

their day in court would pay homage to the sporting theory of justice.[40] CNA's motion for a default judgment is denied and the Beaver defendants' cross-motion to relieve them of the default for failure to comply with Rule 12(a) is granted.

■■■ The Beavers also assert that CNA is required to reimburse the Beavers for the attorneys' fees and litigation costs they have incurred in defending against CNA's cross-claim for a declaratory judgment. "It is the rule in New York that such a recovery may not be had in an affirmative action brought by an assured to settle its rights...."[41] The New York courts reject claims for legal fees by an insured against an insurer in cases in which the insurer did not cast the insured "in a defensive posture by the legal steps [it] takes in an effort to free itself from its policy obligations."[42]

CNA did not cast the Beavers in a defensive posture by asserting its cross-claim against them. NGM brought this action against both the Beaver defendants and CNA. While both parties cross-claimed against each other, it is clear that under New York law, the Beavers cannot recover against CNA for the costs of prosecuting their cross-claim.[43] Moreover, it would be "absurd" to attempt to apportion cost for the prosecution of CNA's cross-claim against the Beavers since all the claims asserted by the parties to this action involve substantially the same issues.[44] "[In] a battle between the insurer and the insured, seeking to determine their rights and duties under the insurance policy ... [t]he insured may not recoup the expenses of litigating the question of coverage in an action between the contracting parties."[45] CNA was initially placed in a defensive position by NGM, and then again by the Beavers; while it asserted a cross-claim against the Beavers, the prosecution of this cross-claim cannot be separated from the prosecutions of the claims of both NGM and the Beavers against CNA. Indeed, CNA was required to assert the cross-claim since if it failed to do so it would face the risk of waiving its claim that it was not required to defend or to indemnify the Beavers under the policies.

Moreover, the Beavers' contention that CNA had an independent obligation, as an insurer, to defend them in this declaratory judgment action brought by NGM is not supported by the terms of the policies which require CNA to defend "any suit against the insured seeking damages on account of such bodily injury or property damage." The action brought by NGM against the Beavers did not involve a suit for damages within the terms of the policy, nor was it a declaratory judgment action brought by the plaintiff in the underlying action as purely incidental to its damage claims.[46] It involved an independent dispute between the Beavers and a third-party insurer concerning *that* company's own obligation to defend the Beavers, and this must be seen as too attenuated from CNA's general obligation to defend the Beavers in actions arising out of the occurrence to invoke that obligation here. Nor can NGM's suit against the Beavers be said to have been caused by CNA's failure to

**40.** *Insurance Co. of North America v. S/S Hellenic Patriot,* 87 F.R.D. 136, 139 (S.D.N.Y.1980).

**41.** *Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 21, 416 N.Y.S.2d 559, 564, 389 N.E.2d 1080, 1084 (1979); *Doyle v. Allstate Ins. Co.,* 1 N.Y.2d 439, 154 N.Y.S.2d 10, 136 N.E.2d 484 (1956).

**42.** *See Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 21, 416 N.Y.S.2d 559, 564, 389 N.E.2d 1080, 1084 (1979) (citations omitted); *see also Johnson v. General Mut. Ins. Co.,* 24 N.Y.2d 42, 298 N.Y.S.2d 937, 246 N.E.2d 713 (1969).

**43.** *Johnson v. General Mut. Ins. Co.,* 24 N.Y.2d 42, 49–50, 298 N.Y.S.2d 937, 942, 246 N.E.2d 713, 716 (1969).

**44.** *Cf. Rekemeyer v. Empire Mut. Ins. Co.,* 60 A.D.2d 492, 401 N.Y.S.2d 878 (3d Dep't 1978).

**45.** *Id.,* 401 N.Y.S.2d at 879.

**46.** *Cf. Johnson v. General Mut. Ins. Co.,* 24 N.Y.2d 42, 298 N.Y.S.2d 937, 246 N.E.2d 713 (1969) (declaratory judgment action brought by plaintiff was purely incidental to his tort action and it would not be realistic to separate the consequences of one from the other).

defend the Beavers in the underlying action since NGM would still have had an independent obligation to share in the costs of the defense.

The Beavers also assert that they are entitled to attorneys' fees and damages pursuant to section 349 of the New York General Business Law. However, the record supports CNA's contention that the disclaimer of its contractual obligation to defend the Beavers was asserted in good faith, and therefore an award of fees and damages pursuant to section 349 would be improper.[47] Since this court has found no evidence of bad faith, deception, or fraud on the part of CNA, it is not necessary to reach the issue of whether section 349 can be applied in favor of a small business, such as the Beavers, as opposed to only an individual consumer.

Finally, decision is reserved on the issue of whether or not the burden of proof on the duty to indemnify has shifted to CNA until the determination of New York State's Superfund action against the Beavers.

## CONCLUSION

CNA is required to defend the Beavers in the underlying Superfund action and it must share the costs of that action, already incurred and to be incurred, with NGM on a pro rata basis. The Beavers' motion for the payment of attorneys' fees and the costs of this litigation, as well as damages pursuant to section 349, by CNA are denied. CNA's motion for a default judgment is denied and the Beaver defendants' cross-motion to relieve them of the default for failure to comply with Rule 12(a) is granted.

So ordered.

47. *Cf. Allstate Ins. Co. v. Foschio,* 93 A.D.2d 328, 462 N.Y.S.2d 44 (2d Dep't 1983).