FEDERAL INSURANCE COMPANY, Plaintiff,

v.

CABLEVISION SYSTEMS DEVELOPMENT COMPANY, Charles F. Dolan, Communications Management Corporations, Cablevision Systems Holdings Company, Atlantic Cable Television Service Corporation, Cablevision of Huntington, Cablevision Systems Huntington Corporations, Cablevision Program Services Company, Cablevision Systems Corporation, Cablevision Consolidations Company, Sportschannel Associates, Long Island Cable Communications Development Company, AM Cable TV Industries, Inc., Lawrence Meli, Robert J. Sullivan, John Tatta, American Employers Insurance Company, Liberty Mutual Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pennsylvania, and Mission Insurance Company, Defendants.

and

RELATED COUNTERCLAIMS AND CROSS–CLAIMS.

No. 85 Civ. 0250.

United States District Court, E.D. New York.

June 26, 1987.

Simpson Thacher & Bartlett, New York City, for plaintiff; Barry R. Ostrager, Mary Kay Vyskocil, of counsel.

Semel, Boeckmann, Diamond, Schepp and Yuhas, New York City, for defendant Liberty Mut. Ins. Co.; Douglas A. Boeckmann, James F. Kelleher, of counsel.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendant American Employers Ins.; Herbert Dicker, Albert A. Foster, Jr., of counsel.

BARTELS, District Judge.

In this case three primary coinsurers contest the apportionment of defense costs that were expended on behalf of an insured. In 1983 Cablevision Systems Development Company and affiliated corporations, partnerships, and individuals ("Cablevision") were sued in an action entitled *Nishimura v. Dolan,* 83 Civ. 0085 (JRB) (E.D.N.Y.) (the "Nishimura action"). At the time Cablevision held, among others, four Comprehensive General Liability Insurance policies from three separate insurers during the period relevant to the *Nishimura* action: one policy from Federal Insurance Company ("Federal"), with a $500,000 indemnification liability limit; two policies from American Employers Insurance Company ("American Employers"), each with a $1,000,000 indemnification liability limit; and one policy from Liberty Mutual Insurance Company ("Liberty Mutual"), with a $2,000,000 indemnification liability limit.

Each policy provided for the defense of Cablevision in "any suit" concerning covered personal or advertising injury

> even if any of the allegations in the suit are groundless, false, or fraudulent, and [the insurer] may make such investigation and settlement of any claim or suit as [the insurer] deems expedient, but ... [the insurer] shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the ... [insurer's] liability has been exhausted by payment of judgments or settlements.

Each policy also contains matching "other insurance" provisions.[1]

After being sued by Nishimura, Cablevision called upon its three insurers to meet their defense obligations. Federal and American Employers complied, but Liberty Mutual did not, arguing that Nishimura's claims fell outside its policy coverage. Federal then brought a declaratory judgment action in which this Court determined that Liberty Mutual did, in fact, have an obligation to defend Cablevision in the *Nishimura* action. At that time a decision on the apportionment of defense costs between coinsurers was deemed "premature." *Federal Ins. Co. v. Cablevision Systems Dev. Co.,* 637 F.Supp. 1568, 1571 n. 4 (E.D.N.Y.1986).

Subsequently, the three insurers agreed to "front" Cablevision 1.9 million dollars[2] as final settlement of all Cablevision's claims arising out of the *Nishimura* action, including claims for past and future defense costs, indemnity, attorneys fees and

---

1. Each "other insurance" provision stated:

   When both this insurance and other insurance apply to the loss on the same basis ... the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution Provision below:

   (a) Contribution by Equal Shares. If all such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit or the full amount of the loss is paid.

2. The actual settlement figure was for $2,100,000, to which National Union Fire Insurance Company of Pittsburgh, PA, and Mission Insurance Company contributed $150,000 and $50,000 respectively. In the *Nishimura* action, Cablevision had incurred defense fees and expenses, through June 30, 1986, in the amount of $2,097,897.68 and interest on that amount in excess of $400,000.

interest. Initially, the $1,900,000 was allocated, subject to final agreement, in the following amounts:

| | |
|---|---|
| Federal | $570,000 |
| American Employers | $665,000 |
| Liberty Mutual | $665,000 |

Under the settlement agreement concerning *Federal Ins Co., supra,* the Court expressly retained jurisdiction to determine final defense costs apportionment, should the coinsurers be unable to reach final agreement. We have arrived at that impasse, with Federal moving under Fed.R. Civ.P. 56(a) for apportionment of the defense costs *pro rata,* to reflect each insurer's respective indemnity policy limits, and both Liberty Mutual and American Employers cross-moving for equal apportionment, irrespective of such limits. Under Federal's theory, it is owed $179,444 from both Liberty Mutual and American Employers. These two companies maintain, in turn, that they are each entitled to $31,666.66 from Federal.

### Discussion

In this case the difference between apportionment of defense costs and indemnity liability is crucial. *See Servidone Constr. Corp. v. Security Ins. Co. of Hartford,* 64 N.Y.2d 419, 488 N.Y.S.2d 139, 477 N.E.2d 441 (1985). We note at the beginning that the presence of matching "other insurance" clauses in all three policies "adequately manifest an intent for the application of [indemnity loss] contribution by equal shares", *J.P. Realty v. Public Serv. Ins.,* 102 A.D.2d 68, 476 N.Y.S.2d 325 (1st Dep't 1984) *aff'd* 64 N.Y.2d 945, 488 N.Y. S.2d 650, 477 N.E.2d 1104 (1985). Consequently, if liability for indemnity loss were at issue, apportionment by equal shares would follow. However, these summary judgment motions deal instead with defense costs, and the apportionment of such costs between primary coinsurers therefore requires a clarification of the relationship between an insurer's defense and indemnity obligations. As far as we can ascertain, this relationship has not been clearly resolved by the New York courts.

American Employers and Liberty Mutual argue that the relationship between indemnity loss and defense costs is direct and controlling. That is, they argue that where, as here, the coinsurers have indicated their intent to split indemnity liability losses equally, defense costs incurred pursuant to those same policies should also be apportioned equally (i.e., ⅓ each).

Federal, on the other hand, argues that any intent to apportion indemnity liability equally among insurers is not controlling as a matter of law regarding the division of defense costs because the two obligations are separate and distinct. Rather, Federal contends that the Court should equitably apportion defense costs *pro rata,* in accord with the respective indemnification limits of each coinsurer's policy, under established precedent. Neither argument is correct.

Federal's position is valid to the extent that it differentiates between indemnity liability and defense costs. It is well settled in New York that the obligation of insurers to defend their insured is "heavy indeed" and broader than their obligation to indemnify. *Fed. Ins. Co., supra; Intern. Paper Co. v. Continental Cas. Co.,* 35 N.Y.2d 322, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974). Both of these obligations arise from two distinct promises by the insurer to the insured. *See Intern paper Co., supra; Brunner v. McCullough,* 216 F.Supp. 496, 499 (E.D.Pa.1963) *explaining Lee v. Aetna Casualty & Surety Co.,* 178 F.2d 750 (2d Cir.1949). Moreover, though not completely unrelated, these two obligations are essentially separate, involving different standards, tests, and considerations. *See Servidone Construction Corp. v. Security Ins Co. of Hartford, supra; see also Journal Pub. Co. v. General Cas. Co.,* 210 F.2d 202 (9th Cir.1954); *Pacific Indem. Co. v. Linn,* 590 F.Supp. 643, 651 n. 10 (E.D.Pa. 1984) *aff'd* 766 F.2d 754 (3rd Cir.1985).

More important, though, is the fact that indemnification liability is inherently limited, whereas the duty to defend is essentially limitless,[3] *United Services Automobile*

3. The coinsurers here could have expressly lim-    ited their defense obligations. *See Globe Air-*

*Assoc. v. Russom,* 241 F.2d 296, 303 (5th Cir.1957); *Blasch v. Chrysler Motors Corp.,* 114 Misc.2d 223, 450 N.Y.S.2d 1012, 1016 (Sup.Ct. Albany Co.1982) *rev'd on other grounds,* 93 A.D.2d 934, 462 N.Y.S.2d 313 (3d Dep't 1983); *Amer. Employers Ins. Co. v. Globe Aircraft Specialties, Inc.,* 205 Misc.2d 1066. 131 N.Y.S.2d 393 (Sup.Ct.N.Y.Co.1954), and indivisible. *See Atlantic Mut. Ins. Co.,* 797 F.2d 1288 (5th Cir.1986); *Clarke v. Fidelity & Cas. Co. of N.Y.,* 55 Misc.2d 327, 285 N.Y.S.2d 503 (Sup.Ct.N.Y.Co.1967).

New York's own courts have also consistently treated these two obligations separately in deed, if not in word. *See, e.g., Stauffer Chemical Co. v. Ins. Co. of North America,* 372 F.Supp. 1303 (S.D.N.Y.1973); *U.S. Fidelity & Guaranty Co. v. Capfer,* 48 N.Y.2d 871, 424 N.Y.S.2d 356, 400 N.E.2d 298 (1979); *Gordon v. Nationwide Mutual Ins. Co.,* 30 N.Y.2d 427, 334 N.Y.S.2d 601, 608, 285 N.E.2d 849 (1972) cert. den. 410 U.S. 931, 93 S.Ct. 1374, 55 L.Ed.2d 593 (1973). *But see Allstate Ins Co. v. Consol. Mut. Ins. Co.,* 35 A.D.2d 535, 313 N.Y.S.2d 181 (2d Dep't 1970): *Allstate Ins. Co. v. Employers Mut. Liability Ins. Co. of Wis.,* 57 Misc.2d 299, 292 N.Y.S.2d 554 (Sup. Ct. Niagara Co.1968). Accordingly, the matching "other insurance" provisions, even though they compel equal indemnity loss apportionment, do not control the division of defense costs here.[4]

However, it does not follow that defense cost apportionment is, as Federal contends, easily solved by reference to the general *pro rata* rule, as described in *Federal Ins. Co. v. Atlantic Ins. Co.,* 25 N.Y.2d 71, 302 N.Y.S.2d 769, 250 N.E.2d 193 (1969). Under that rule, in the absence of an agreement to the contrary, indemnification liability will be apportioned between coinsurers based upon each policies' indemnity loss limits. This general rule, though, is compelling only with respect to indemnification liability. *See, e.g., Atlantic Mutual Ins. Co. v. Truck Ins. Co., supra.*

When both defense costs and indemnity loss are apportioned in the same case, the courts have reached different results. For instance, in the seminal case of *Federal Ins. Co. v. Atlantic Ins Co., supra,* New York's Court of Appeals summarily required two coinsurers to apportion defense costs in proportion to their policies's liability limits, after first applying the general *pro rata* rule to an indemnity loss. *See also, National Grange Mut. Ins. Co. v. Continental Cas. Ins. Co.,* 650 F.Supp. 1404, 1413 (S.D.N.Y. 1986) aff'd on reh'g, slip op. 85–5783, Feb. 11, 1987; *Atlantic Mut. Ins. Co. v. Atlantic Nat. Ins. Co.,* 38 A.D.2d 517, 326 N.Y.S.2d 438 (1st Dep't 1971) *aff'd* 33 N.Y.2d 817, 350 N.Y.S.2d 909, 305 N.E.2d 917 (1973).

In support of this *pro rata* theory a strong argument has been made that where the potential indemnity loss liability of one insurer is greater than that of another, the degree of its interest in the litigation is greater, and the insurer should therefore bear the costs of defense in proportion to its interest. It is further argued that since insurance premiums compensate insurers for the risk of both indemnity loss and defense costs, the insurer receiving the greater premium should be required to bear a greater proportion of such costs.[5]

---

port, supra. However in this case, where defense costs were incurred prior to judgment or settlement in the *Nishimura* action, they did not do so. *See Prince v. Universal Underwriters Ins. Co.,* 143 N.W.2d 708 (N.D.1966); 7A Appleman Ins. Law and Practice @4691 (construing duty to defend provision identical in all key respects with the ones contained within the policies here as "clearly" rendering defense costs "addition[al] to the applicable limits of liability").

**4.** This is not true in all jurisdictions. *See Pacific Power & Light Co. v. Transport Indemnity Co.,* 460 F.2d 959, 963 (9th Cir.1972) (interpreting Oregon law); *Liberty Mut. Ins. Co. v. Home Ins. Co.,* 583 F.Supp. 849 (W.D.Pa.1984). If indem-

nification and defense costs were apportioned identically, then Federal would not be entitled to judgment.

**5.** This argument was made on rehearing in *National Grange, supra,* wherein the court stated:

Where the potential liability of one insurer is greater than that of another, the degree of its interest in the litigation is clearly greater, and thus it should bear the costs of the defense in proportion to its interest. Indeed, arguably the premiums received by an insurer for policies issued by it include compensation for the risk of having to defend a claim on that policy as well as the risk of having to pay the claim.

One difficulty with this argument is that where the potential defense costs are not limited by the policies, as in this case, such costs are unascertainable when each insurance premium is set. Accordingly, the portion of a given insurance premium that is properly allocable to defense costs cannot be calculated. *See, e.g., Fed. Ins. Co. v. Atlantic Nat. Ins. Co., supra.*

However, in other cases, defense costs were either apportioned equally while indemnification was divided according to the general *pro rata* rule, *Atlantic Mut. Ins. Co. v. Truck Ins. Exchange, supra,* or both obligations were apportioned equally. *Emons Industires, Inc. v. Lib. Mut. Fire Ins. Co.,* 481 F.Supp. 1022, 1027 (S.D.N.Y.1979). *See also Vigilant Ins. Co. v. Employers Ins. of Wausau,* 626 F.Supp. 262 (S.D.N.Y. 1986); *N.Y. State Urban Development Corp. v. VSL Corp.,* 563 F.Supp. 187 (S.D. N.Y.1983) aff'd 738 F.2d 61 (2d Cir.); *U.S. Fire Ins. Co. v. Allstate Ins. Co.,* 65 A.D.2d 674, 411 N.Y.S.2d 548 (4th Dep't 1978); *Allstate Ins. Co. v. Aetna Cas. & Sur. Co.,* 123 Misc.2d 932, 475 N.Y.S.2d 219 (Sup.Ct.Sullivan Co.1984). We find no New York authority covering the unique factual background of this case. Accordingly, where apportionment of defense costs are concerned we must determine as far as possible the intent of the coinsurers, their respective obligations to defend, and the equitable considerations that are applicable.

In making this determination, we note first that a number of the cases cited by Federal for the proposition that, in equity, each coinsurer's indemnity policy limit should be the yardstick of defense cost division, had nothing to do with defense costs. With respect to those cases that did deal with defense costs, none of them presented the court with, as in this case, a demonstrated intent among coinsurers to divide indemnification losses equally. *See, e.g., Atlantic Mut. Ins. Co. v. Atlantic Nat. Ins. Co., supra; Fed. Ins. Co. v. Atlantic Ins. Co., supra.* Federal's cases are therefore inapposite to this case. Specifically, while an intent by coinsurers to ap-

portion indemnity loss equally does not control the division of defense costs as a matter of law, that intent is an important factor of reference with respect to such division.

Given our facts we find that *Atlantic Mut. Ins. Co. v. Truck Ins. Exchange, supra,* presents the strongest rationale for apportioning defense costs equally. In that case, the Fifth Circuit, applying New York law, first apportioned indemnity losses between primary coinsurers *pro rata,* pursuant to each policies' indemnity loss limits, and then, stated:

> Because Truck and Atlantic had equal obligations to defend ... [the insured], defense costs should be apportioned equally between them.

*Id.* at 1296, n. 6. *See also First Ins. Co. of Hawaii v. Continental Cas. Co.,* 466 F.2d 807, 811 (9th cir.1972).

So too, in the present case, as in most other cases, each insurer had an equal, unlimited obligation to defend its insured. In addition, each insurer, in its "other insurance" clause, demonstrated the intent to apportion indemnity loss equally, which was a departure from the general *pro rata* indemnity loss rule that is usually applicable. Considering these facts, the Court finds that defense costs should be apportioned equally and therefore grants the cross-summary judgment motions of American Employers and Liberty Mutual, and direct Federal to pay each of them $31,666.66.

SO ORDERED.