J. P. REALTY TRUST et al., Appellants, v PUBLIC SERVICE MUTUAL INSURANCE COMPANY, Respondent and Third-Party Plaintiff. TRAVELERS INSURANCE COMPANY, Third-Party Defendant.

First Department, June 5, 1984

### APPEARANCES OF COUNSEL

*Joseph L. Forstadt* of counsel (*Jeffrey Boak* and *Barbara Ettlinger* with him on the brief; *Stroock & Stroock & Lavan,* attorneys), for appellants and third-party defendant.

*Edith T. Sullivan* of counsel (*Nathan Cyperstein* and *Bruckman Bernstone & Goldman,* attorneys), for defendant-respondent.

### OPINION OF THE COURT

*Per Curiam.*

London Knitting Mills, Inc. (London), entered into a lease with plaintiff J. P. Realty Trust (Realty) on Novem-

ber 17, 1975. Paragraphs 1, 21, and 23 are particularly relevant and shall be set forth in their entirety:

"1. The Lessor agrees to lease and the Lessee hereby agrees to lease the entire third floor (east and west side) and one-half of the fourth floor (westerly side) of the premises known as 46-55 Metropolitan Avenue, Maspeth, LI, New York and consisting more or less of approximately 12,000 square feet * * *

"21. Use of elevators — Lessee's use of elevators shall be limited as follows. Small freight elevator located on the westerly side shall be limited in use for the *third and fourth floors only*. The large freight elevator located on the easterly side may be used by the Lessee for the purpose of shipping and receiving merchandise between the hours of 8:00 A.M. and 4:30 P.M. Monday through Friday, excepting holidays which may fall during the work week. Any use of the large freight elevator on a holiday and/or on a Saturday shall be arranged by the Lessee with special permission from the Lessor. Lessee shall not overload the elevators and shall conform to the maximum weight requirements called for by the building code for such elevators * * *

"23. Lessee shall throughout the term of this lease carry Landlord and Tenant public liability property damage and elevator liability insurance with companies approved by the Lessor. Lessee shall furnish the Lessor with certificates of insurance naming the Lessor as an additional insured. Such policy shall contain provisions for a ten (10) day written notice of cancellation or change to be sent to the Lessor. Coverage shall be in amounts not less than Three Hundred Thousand ($300,000.00) Dollars for Landlord and Tenant public liability, and elevator liability insurance and One Hundred Thousand ($100,000.00) Dollars for property damage insurance. In the event the Lessee shall fail to provide insurance as aforesaid to the Lessor prior to occupying such premises, then the Lessor shall place such insurance and the premium shall be so much additional rent payable by the Lessee on the next rental due date."

Pursuant to paragraph 23 of the lease, London secured a policy from Public Service Mutual Insurance Company

(Public) with coverage extending to $300,000. In accordance with paragraph 21 of the lease, Realty and its affiliate, The Prince Company, Inc. (Prince), were added to the Public policy as additional insureds. The indorsement, adding Realty and Prince to the Public policy, afforded coverage "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated above." The address of the subject building was set forth on the indorsement immediately above the quoted excerpt.

It should also be stressed that Public charged London additional premiums relating to the small freight elevator on the western side of the building. These premiums provided for an inspection of the small elevator; they also afforded collision coverage for that elevator. It should be remembered that, pursuant to paragraph 21 of the lease, the small freight elevator provided exclusive service for the premises leased by London.

On January 5, 1979, one Leo Hagler, an employee of London, fell to his death in the shaft of the small freight elevator. Plaintiffs Realty and Prince seek a declaration that defendant Public is required to defend and indemnify them in the wrongful death action brought by the decedent's administrator. In the third-party complaint, Public seeks a declaration that third-party defendant Travelers Insurance Company (Travelers) is required to defend and indemnify the plaintiff. The Travelers' policy provided independent coverage for the plaintiffs with limits reaching $1,000,000.

Plaintiff moved and defendant Public cross-moved at Special Term for summary judgment. Special Term denied the motion and cross motion because there were triable issues of fact which included a factual issue as to the location of the occurrence. The court did not reach the question of the proper contribution between the two insurers.

In its brief, Public makes no attempt to establish that the decedent did not fall down the elevator shaft on the west side of the building. In any event, the record conclu-

sively establishes that the fall occurred in that shaft. We thus address the only two issues of merit raised upon this appeal.

■ The first issue is whether Public is required to defend and indemnify the plaintiffs. Paragraph 1 of the lease does not specifically mention the small freight elevator in the description of the demised premises. Nonetheless, it is apparent from paragraph 21 of the lease that the parties intended to include that elevator as part of the leased premises. Moreover, Public charged premiums relating to that small elevator. Those charges constitute a recognition by Public that the small freight elevator was to be included in the coverage. Hence, a declaration is made that Public must defend and indemnify plaintiffs in the wrongful death action.

The second issue relates to the proper contribution to be formulated between Public and Travelers. There is no dispute in this record that each policy contains this identical language:

"When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

"a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

"b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

■ Both sides concede that each policy provides a primary coverage for the occurrence. We are persuaded that these matching clauses, which apparently have become standard in the industry, adequately manifest an intent for the application of contribution by equal shares under the circumstances.

We are aware that a contrary view was taken in a thoughtful opinion which concluded that neither policy contained a provision calling for contribution by equal shares. (*Eagle Star Ins. Co. v General Acc. Fire & Life Ins. Co.,* 100 Misc 2d 792.) However, the *Eagle Star* case relied in significant part upon a decision of the Fifth Circuit Court of Appeals in which, by a 2 to 1 vote, a majority of a panel of that court adopted that interpretation. (*Georgia Cas. & Sur. Co. v Universal Underwriters Ins. Co.,* 534 F2d 1108.) However, a few months after the decision in *Eagle Star Ins. Co.,* a unanimous panel of the Fifth Circuit Court of Appeals overruled *Georgia Cas. & Sur. Co., sub silentio,* and held under legally indistinguishable circumstances that the clause in question appearing in the policies of the two insurance companies was correctly construed to require contribution by equal parts. (*McDaniels v Great Atlantic & Pacific Tea Co.,* 602 F2d 78.) Notably, one of the panel majority in *Georgia Cas. & Sur. Co.* joined in this later decision, the principle of which was reaffirmed by the Fifth Circuit in *Employers Cas. Co. v Employers Commercial Union Ins. Co.* (632 F2d 1215). Every other court to consider the question has reached the same conclusion. (See *Ryder Truck Rental v United States Fid. & Guar. Co.,* 527 F Supp 666; *Commercial Union Assur. Cos. v Aetna Cas. & Sur. Co.,* 455 F Supp 1190; *Argonaut Ins. Co. v Cotton States Mut. Ins. Co.,* 373 F Supp 817; see, also, *Veillon v Southern Farm Bur.,* 254 So 2d 130.)

In *McDaniels v Great Atlantic & Pacific Tea Co.* (*supra*) the court carefully considered the contention that subdivision (a) is inapplicable because there has not been any unconditional promise to contribute equal shares. The court's response seems to us unanswerable (at p 83): "We cannot uphold this contention because subdivision (a)'s applicability does not depend upon such an unconditional

promise. Nothing in subdivision (a) imports such a requirement. Subdivision (b), providing for contribution on a pro rata basis, does not become applicable unless the 'other insurance does not provide for contribution by equal shares.' In this case, both policies clearly *provide* for contribution by equal shares and neither policy provides a basis other than equal as the exclusive basis for computing contribution. The fact that the policy provides for an alternative method of apportioning the loss had there been no equal share provision in the other policy does not mean that neither policy had such an equal share provision in it. We refuse to construe the word 'provide' to require an unconditional promise. Had that been intended, the draftsman could have introduced paragraph (b) with, 'If any of such other insurance does not provide, unconditionally, for contribution by equal shares' ".

Accordingly, the order of the Supreme Court, New York County (Edwards, J.), denying the motion and cross motion for summary judgment should be reversed, on the law, with costs, and the motion and cross motion should be granted to the extent of declaring that (i) Public must defend and indemnify the plaintiffs in the wrongful death action and (ii) contributions between Public and Travelers shall be by equal shares.

MURPHY, P. J. (dissenting in part). I agree with the majority that a declaration should be made that Public must defend and indemnify the plaintiffs in the wrongful death action. However, I believe that the contribution between the two insurers should be upon a pro rata basis.

Where the provisions of a policy are clear and unambiguous, they must be given their plain and ordinary meaning. The courts should refrain from rewriting such an agreement (*Government Employees Ins. Co. v Kligler,* 42 NY2d 863, 864; see, generally, 29 NY Jur, Insurance, §§ 597-598). The "mirroring" language under discussion is quite clear and unambiguous. That language does not express a "preference" by either insurer as to whether contribution should be by (i) equal shares or (ii) pro rata. The "mirroring" language simply provides for two possible contingencies. Paragraph 6(a) of each policy provides for contribu-

tion by equal shares if other insurance provides for contribution by equal shares. Paragraph 6(b) provides that contribution will be pro rata if the other insurance does not provide for contribution by equal shares.

This identical issue was considered in a recent opinion of Justice Shapiro. In analyzing this same "mirroring" language, Justice Shapiro reasoned as follows (*Eagle Star Ins. Co. v General Acc. Fire & Life Ins. Co.,* 100 Misc 2d 792, 794): "It is essentially conceded that neither policy contains a provision calling for contribution by equal shares. That being so, it would appear that paragraph 6(b) of the policies, dictating that the loss be prorated, would govern rather than 6(a) which would mandate an equal participation".

Justice Shapiro had followed the reasoning of the majority in *Georgia Cas. & Sur. Co. v Universal Underwriters Ins. Co.* (534 F2d 1108). In pertinent part, the majority in *Georgia Cas.* reasoned as follows (at p 1111): "The remaining question is whether Paragraph 6(a) or Paragraph 6(b) of 'Conditions' is applicable to this case. The policies have the same pertinent provisions as to 'Other Insurance'. If either insurance policy provides for contribution by equal shares, then both so provide. Likewise, if either of the policies provides for pro rata contributions, then both so provide. Both policies containing the identical provision do not provide either for pro rata contribution or for contribution by equal shares. Each depends upon the other policy to provide validity and meaning to one or the other of the subparagraphs of Condition 6. This Court, therefore, is of the opinion that the condition of 6(a), 'If all of such other valid * * * insurance provides for contribution by equal shares,' has not been met and that the condition of 6(b), 'If any of such insurance does not provide for contribution by equal shares,' has been met and that, therefore, each policy provides that the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under the policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss".

I would agree with the majority herein that the Fifth Circuit, *sub silentio,* overruled its opinion in *Georgia Cas.*

in *McDaniels v Great Atlantic & Pacific Tea Co.* (602 F2d 78). As the majority notes, the Bench in *McDaniels* states that both policies therein provide for contribution by equal shares. That Bench makes no attempt to analyze the "mirroring" language under discussion. Without explanation or elaboration, it summarily reaches the legal conclusion that contribution should be by equal shares. With due respect to that Bench, its determination on this point would seem to be a "bootstrap operation".

Another Bench in the Fifth Circuit subsequently reached the same conclusion on this point in *Employers Cas. Co. v Employers Commercial Union Ins. Co.* (632 F2d 1215). The Bench in *Employers* stated (p 1220) that "both policies show a preference for contribution by equal shares". Again, the Bench in *Employers* does not explain how the insurers expressed a "preference" by merely providing for two contingencies in their policies.

The Fifth Circuit's decision in *McDaniels (supra)* was also followed in *Ryder Truck Rental v United States Fid. & Guar. Co.* (527 F Supp 666). Again, the decision in *Ryder* is noteworthy insofar as it reaches the identical legal conclusion on this subject without analyzing the "mirroring" language in the policies (at p 670): "Because both policies furnish primary coverage, subdivision (a) applies, and each insurer must contribute toward the settlement expenses in equal shares until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid. See *Blue Bird Body Co. v. Ryder Truck Rental, supra* at 727; *McDaniels v. Great Atlantic & Pac. Tea Co.,* 602 F2d 78, 83 (5th Cir. 1979); *Commercial U. Assur. v. Aetna Cas. & Sur. Co.,* 455 F Supp. 1190, 1194-1195 (D.N.H. 1978)".

The District Court in *Commercial Union Assur. Cos. v Aetna Cas. & Sur. Co.* (455 F Supp 1190) made no attempt to dissect the "mirroring" language. Without addressing the language in the policies, the District Court concluded (at p 1195): "Inasmuch as both policies furnish primary coverage, the second paragraph of the condition above outlined provides for contribution by equal shares".

*Argonaut Ins. Co. v Cotton States Mut. Ins. Co.* (373 F Supp 817), also cited by the majority, is of dubious prece-

dential value. In finding that there should be contribution by equal shares, the District Court stated (at pp 820-821): "The policies then provide that if the other insurance provides for contribution by equal shares (which is the case here) then the Company would not be liable for a greater proportion of the loss than would be payable if each insurer contributed an equal share". It is not clear from the decision in *Argonaut* whether the policies contained separate provisions requiring contributions in equal shares. Even if it were assumed that the policies did not contain separate provisions requiring contribution in equal shares, but simply contained the "mirroring" language under discussion, there is no explanation presented for the District Court's determination. To repeat the obvious, the District Court presents a legal conclusion without setting forth its rationale therefor.

*Veillon v Southern Farm Bur.* (254 So 2d 130), still another decision cited by the majority, involved three policies. Two of the policies contained the "mirroring" language now in dispute; the third policy provided for pro rata contribution. The Court of Appeal of Louisiana employed the same reasoning of Justice Shapiro in *Eagle Star* (*supra*) and the majority in *Georgia Cas.* (*supra*). To the extent here relevant, the Court of Appeal of Louisiana found (254 So 2d, at p 136): "We find merit, however, in Hardware Mutual's alternate argument that the trial judge erred in his distribution of the liability as between the three insurance companies. As hereinbefore stated, the trial judge condemned Southern Farm Bureau and Hardware Mutual to contribute in equal shares, yet the clauses from their policies quoted above clearly state that they will do so only if all insurers concerned are bound by their policies to do likewise. If such is not the case, by the terms of both policies, the contribution of each insurer is to be on a pro rata basis in proportion to the applicable policy limits. Clearly, the clause quoted from the Fireman's Fund policy does not provide for contribution by equal shares but rather limits such contribution to a pro rata basis, and when taken together with the clauses from the other two policies produces the end result that contribution by all three insurers must be on a pro rata basis". There is no

reason to believe that the Court of Appeal in *Veillon* would have reached a different result if the three policies contained "mirroring" language.

The majority in this proceeding is apparently dissatisfied with the result to be achieved if literal effect is given to the "mirroring" language. For reasons or policies not expressed, the majority would rewrite the policies to achieve its conception of an equitable result in this case. As was previously mentioned, the courts are prohibited from doing so (*Weinberg & Holman v Providence Wash. Ins. Co.*, 254 NY 387, 391). *McDaniels* (*supra*) and the other opinions cited in the majority opinion opt for contribution by equal shares but they provide no legal analysis for that selection.

Accordingly, contribution should be made on a pro rata basis.

KUPFERMAN, SANDLER, ROSS and SILVERMAN, JJ., concur; MURPHY, P. J., dissents in part in a separate opinion.

Order, Supreme Court, New York County, entered on October 19, 1983, reversed, on the law, and the motion and cross motion are granted to the extent of declaring that (i) Public Service Mutual Insurance Company must defend and indemnify the plaintiffs in the wrongful death action, and (ii) contributions between Public and Travelers is by equal shares. Appellants shall recover of defendant-respondent $75 costs and disbursements of this appeal.