836 F.2d 54
 FEDERAL INSURANCE COMPANY, Plaintiff-Appellant,
v.
CABLEVISION SYSTEMS DEVELOPMENT COMPANY, Charles F. Dolan,
Communications Management Corporations, Cablevision Systems
Holdings Company, Atlantic Cable Television Service
Corporation, Cablevision of Huntington, Cablevision Systems
Huntington Corporations, Cablevision Program Services
Company, Cablevision Systems Corporation, Sportschannel
Associates, Long Island Cable Communications Development
Company, AM Cable TV Industries, Inc., Lawrence Meli, Robert
J. Sullivan, John Tatta, and National Union Fire Insurance
Company of Pittsburgh, Pennsylvania, Defendants,
American Employers Insurance Company and Liberty Mutual
Insurance Company, Defendants-Appellees.
 No. 426, Docket 87-7650.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 17, 1987.
Decided Dec. 18, 1987.
 
 Mary Kay Vyskocil, New York City (Andrew S. Amer, and Simpson Thacher & Bartlett, New York City, on brief), for plaintiff-appellant Federal Ins. Co.
 Herbert Dicker, New York City (Del E. Teague, Albert A. Foster, Jr., and Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, on brief), for defendant-appellee American Employers Ins. Co.
 James F. Kelleher, New York City (Douglas A. Boeckmann, and Semel, Boeckmann, Diamond, Schepp and Yuhas, New York City, on brief), for defendant-appellee Liberty Mut. Ins. Co.
 Mark D. Lebow and Coudert Brothers, New York City, filed a brief for amicus curiae The Travelers Corp.
 Before LUMBARD, TIMBERS and KEARSE, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 Federal Insurance Company ("appellant" or "Federal") appeals from a judgment entered July 6, 1987 in the Eastern District of New York, John R. Bartels, District Judge, granting the cross-motions for summary judgment by American Employers Insurance Company ("American Employers") and Liberty Mutual Insurance Company ("Liberty Mutual") against Federal, to apportion the settlement amount paid to a common insured in equal shares. Federal Insurance Co. v. Cablevision Systems Dev. Co., 662 F.Supp. 1537 (E.D.N.Y.1987).
 
 
 2
 The central question presented is whether the costs of defending a common insured should be apportioned equally among three primary coinsurers when the coinsurers' comprehensive general liability policies contain an "other insurance" clause that apportions indemnity losses equally. Other subordinate questions are presented. We agree with the district court that the defense costs should be apportioned equally. We affirm.
 
 I.
 
 3
 We summarize only those facts believed necessary to an understanding of the questions raised on appeal.
 
 
 4
 In 1983, Communication Systems Corp., Huntington TV Cable Corp. and Home Entertainment Productions, Inc. sued Cablevision Systems Development Company, its affiliates and certain officers (collectively "Cablevision") for alleged antitrust violations in connection with Cablevision's successful efforts to obtain the exclusive rights to cablecast the games of four professional New York sports teams (the Yankees, the Mets, the Islanders, and the Nets). Nishimura v. Dolan, 599 F.Supp. 484 (E.D.N.Y.1984). At the time, Cablevision held, among others, four comprehensive general liability policies ("CGL policies") issued by Federal, American Employers and Liberty Mutual.
 
 
 5
 Cablevision purchased a one-year primary comprehensive insurance policy from Liberty Mutual with an indemnity limit of $2,000,000. The coverage commenced September 1, 1980. Cablevision also purchased two one-year primary insurance policies from American Employers with an indemnity limit of $1,000,000, covering the period from September 1, 1980 through September 1, 1981, and September 1, 1981 through September 1, 1982, respectively. Cablevision also purchased a one-year primary insurance policy from Federal with an indemnity limit of $500,000. The coverage under this policy commenced September 1, 1982. Cablevision incurred more than $2,400,000 in attorneys fees and defense expenses through June 30, 1986. Federal Insurance Co., supra, 662 F.Supp. at 1538 n. 2. Since Cablevision's antitrust action involved claims that it believed were covered by these policies, it sought coverage for its defense expenses from Liberty Mutual, American Employers and Federal.
 
 
 6
 Federal and American Employers acknowledged their obligations to defend Cablevision. Liberty Mutual did not. Liberty Mutual claimed that the allegations set forth in the complaint in Nishimura were outside its policy coverage. As a result, Federal commenced an action against Cablevision, American Employers and Liberty Mutual, seeking a declaratory judgment as to the rights and liabilities of the insurance companies with respect to the Nishimura action. Federal Insurance Co. v. Cablevision Systems Dev. Co., 637 F.Supp. 1568 (E.D.N.Y. 1986). On July 1, 1986, the district court held that Liberty Mutual was obligated to defend Cablevision, or to reimburse it for the costs of defense. Id. at 1583. The court further held that it was premature at that time to decide on the apportionment of defense costs between the coinsurers. Id. at 1571 n. 4.
 
 
 7
 On September 5, 1986, Cablevision and its insurers entered into a settlement agreement pursuant to which Cablevision received $2,100,000 as a final and complete compromise of all the rights and obligations between Cablevision and its insurers for any actual or potential liability for defense costs arising from the Nishimura action. Under the settlement agreement, American Employers and Liberty Mutual each agreed to pay Cablevision $665,000 and Federal agreed to pay $570,000. National Union Fire Insurance Company and Mission Insurance Company, two other Cablevision insurers, contributed $150,000 and $50,000 respectively. The settlement agreement, however, was without prejudice to the rights of Federal, American Employers and Liberty Mutual to seek reallocation of the settlement amount.
 
 
 8
 On September 9, 1986, the parties to the settlement agreement filed a stipulation of dismissal, agreeing that all claims asserted in Federal Insurance Co. v. Cablevision Systems Dev. Co., supra, 637 F.Supp. 1568, be dismissed with prejudice, except for those claims between Federal, American Employers and Liberty Mutual relating to apportionment of Cablevision's defense expenses among themselves. In March 1987, Federal moved for summary judgment on the issue of apportioning the settlement amount among Federal, American Employers and Liberty Mutual. Federal asserted that the contributions to the settlement amount by these three insurers should be apportioned on a pro rata basis in proportion to the coinsurers' respective indemnity policy limits. Liberty Mutual and American Employers each cross-moved for summary judgment, asserting that the settlement amount should be apportioned on an equal basis among the three carriers, irrespective of indemnity limits.
 
 
 9
 The district court granted the cross-motions for summary judgment by American Employers and Liberty Mutual. The court held that the three insurers had an equal, unlimited obligation to defend Cablevision. The court stated that the three insurers--Federal, Liberty Mutual and American Employers--"demonstrated the intent to apportion indemnity loss equally", since the CGL policies contained an "other insurance" clause. Federal Insurance Co., supra, 662 F.Supp. at 1541. Accordingly, the court held that the "defense costs should be apportioned equally" between the three insurers. Id. Dividing the agreed settlement in amount of $1,900,000 three ways and adjusting the amounts owed by each insurer so that they are apportioned equally, the court entered judgment directing Federal to pay to American Employers and Liberty Mutual each the sum of $31,666.66, for a total of $63,333.32. From that judgment this appeal was taken.
 
 
 10
 Federal asserts two claims on appeal. First, it claims that the court erred in concluding that under New York law the defense obligations of the three insurers were equal and unlimited. Second, it claims that the court erroneously relied on the "other insurance" provisions contained in the CGL policies in concluding that equal apportionment of the defense obligations was proper. For the reasons that follow we reject appellant's claims and we affirm.
 
 II.
 
 11
 This being a diversity action and Cablevision, a limited partnership with its principal place of business in New York, and the general partner Communication Management Corporation having its principal place of business in New York, we apply New York law. The underlying antitrust litigation is in New York and the parties agree that New York law controls.
 
 
 12
 Federal's first claim is that the defense obligations of the coinsurers were not equal and unlimited. In support of this claim, it asserts that the "exhaustion provision" found in each insurer's CGL policy limits the defense obligations of each insurer with respect to its insured, Cablevision. The "exhaustion provision" found in each CGL policy states:
 
 
 13
 "[T]he company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."
 
 
 14
 Federal asserts that under this "exhaustion provision" each insurer's duty to defend terminates with its payment of the policy limits. We disagree.
 
 
 15
 In International Paper Co. v. Continental Casualty Co., 35 N.Y.2d 322, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974), the New York Court of Appeals held that an insurer's obligation to defend is broader than its obligation to indemnify. There, the International Paper Company sought to recover from its insurer, Continental Casualty Company, the legal fees and disbursements incurred in defending an action brought by an employee of International Paper for personal injuries alleged to have been caused by International Paper's negligence. Continental Casualty informed International Paper that it did not recognize liability and refused to defend. The court stated:
 
 
 16
 "[t]he distinction between liability and coverage must be kept in mind. So far as concerns the obligation of the insure[r] to defend the question is not whether the injured party can maintain a cause of action against the insured, but whether he can state facts which bring the injury within the coverage. If he states such facts the policy requires the insurer to defend irrespective of the insured's ultimate liability."
 
 
 17
 35 N.Y.2d at 326-27, 361 N.Y.S.2d at 876, 320 N.E.2d at 622 (quoting Goldberg v. Lumber Mutual Casualty Insurance Co. of New York, 297 N.Y. 148, 154, 77 N.E.2d 131, 133 (1948)). See also Seaboard Surety Co. v. Gillette Co., 64 N.Y.2d 304, 310, 486 N.Y.S.2d 873, 875-76, 476 N.E.2d 272, 274-75 (1984).
 
 
 18
 In the instant case, Federal argues that, although the duty to defend is separate from the duty to indemnify, the "exhaustion provision" in the CGL policies demonstrates that the duty of each insurer to defend is not equal. Federal further argues that, since Federal's policy had a much lower limit than those of American Employers and Liberty Mutual, it had a reasonable expectation that it would pay out its indemnity dollars sooner and therefore its defense obligations would terminate sooner than the obligations of American Employers and Liberty Mutual.
 
 
 19
 Federal misconstrues the "exhaustion clause". The clause provides that the insurer's duty to defend is released only after a judgment or settlement has been paid. Indeed, at oral argument before us Federal conceded that nothing in the CGL policies limited Federal's defense obligations in an ongoing lawsuit against Cablevision, even if the costs of defense exceeded the amount of coverage.
 
 
 20
 We hold that the district court properly held that under New York law each insurer had an equal and unlimited duty to defend Cablevision.
 
 III.
 
 21
 Federal also claims that the court, in deciding that defense costs should be apportioned equally, erroneously relied upon the "other insurance" clauses contained in the CGL policies of each insurer.
 
 
 22
 In considering this aspect of the case, it may be helpful to keep in mind what the district court did not decide, as well as what it did decide. The court did not hold that the "other insurance" provisions in the three CGL policies controlled the court's decision on the division of the settlement amount. Rather, the court stated that the "other insurance" clauses demonstrated an intent to apportion indemnity loss equally. The court further stated that "while an intent by coinsurers to apportion indemnity loss equally does not control the division of defense costs as a matter of law, that intent is an important factor of reference with respect to such division." Federal Insurance Co., supra, 662 F.Supp. at 1541.
 
 
 23
 In J.P. Realty Trust v. Public Service Mutual Insurance, 102 A.D.2d 68, 476 N.Y.S.2d 325 (App.Div., 1st Dept., 1984), aff'd, 64 N.Y.2d 945, 488 N.Y.S.2d 650, 477 N.E.2d 1104 (1985), the Appellate Division analyzed an "other insurance" clause identical to those contained in the CGL policies in the instant case. There, London Knitting Mills, Inc. ("London Knitting") entered into a lease with J.P. Realty. Under the terms of the lease, London Knitting obtained a policy from Public Service Mutual Insurance ("Public") for elevator liability insurance. J.P. Realty also was included in the policy as an additional insured. When an employee of London Knitting fell to his death in the shaft of a freight elevator, J.P. Realty sought a declaratory judgment that Public was required to defend and indemnify them in the wrongful death action. In a third-party complaint, Public sought a declaratory judgment that the third-party defendant Travelers Insurance Company ("Travelers") was required to defend and indemnify J.P. Realty. Public provided $300,000 and Travelers provided $1,000,000 of coverage for J.P. Realty. One of the issues on appeal was whether Public was required to defend and indemnify J.P. Realty. The court held that it was. Another issue related to the proper contribution between Public and Travelers. The court observed that the policies of Public and Travelers contained mirroring "other insurance" provisions for primary coverage and stated:
 
 
 24
 "[w]e are persuaded that these matching clauses, which apparently have become standard in the industry, adequately manifest an intent for the application of contribution by equal shares under the circumstances."
 
 
 25
 J.P. Realty, supra, 102 A.D.2d at 72, 476 N.Y.S.2d at 328. The court concluded that "contributions between Public and Travelers shall be by equal shares." 102 A.D.2d at 73, 476 N.Y.S.2d at 329. We read the opinion in J.P. Realty to hold for the equal apportionment of defense expenses and indemnity losses.
 
 
 26
 The court's analysis in J.P. Realty is persuasive in the instant case. Here, the common insured's insurers--Federal, American Employers and Liberty Mutual--seek apportionment of a settlement paid to Cablevision for all claims of the insured against the insurers arising out of the Nishimura action. The three CGL policies that provided coverage for Cablevision contained "other insurance" clauses identical with those in J.P. Realty. The "other insurance" clauses in the instant case provided in relevant part:
 
 
 27
 "When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
 
 
 28
 (a) Contribution By Equal Shares. If all such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid."
 
 
 29
 Applying the rationale of J.P. Realty, we hold that the "other insurance" clauses in the instant case indicate an intent that the contributions by the coinsurers to defense costs should be in equal amounts.
 
 IV.
 
 30
 The amount agreed upon in settlement between Cablevision and the primary insurers must be shared equally for another reason. Under New York law, the duty of each of the three insurers to defend Cablevision is separate and equal. Since the insurers cannot defend "part" of the antitrust claims against Cablevision in the underlying Nishimura action, it is logical that the insurers bear the costs of defense equally. See 7C Appleman, Insurance Law and Practice Sec. 4691 (Berdal ed. 1979).
 
 
 31
 In Allstate Insurance Co. v. Aetna Casualty & Surety Co., 123 Misc.2d 932, 475 N.Y.S.2d 219 (Sup.Ct., Sull. Co., 1984), three insurance companies were involved in an action to determine which company would defend the insured in an underlying negligence action. Each of the insurers claimed that it was not obligated to defend the insured. The court held that two of the companies had breached their respective duties to defend. The court also held that Aetna Casualty & Surety Company, the primary insurer, and Allstate Insurance Company, the excess insurer, were required to share the defense costs equally. 123 Misc.2d at 934, 475 N.Y.S.2d at 222. See also Atlantic Mutual Insurance Co. v. Truck Insurance Exchange, 797 F.2d 1288, 1296 n. 6 (5 Cir.1986) (under New York law, defense costs should be apportioned equally among insurers with equal obligations to defend); Emons Industries, Inc. v. Liberty Mutual Fire Insurance Co., 481 F.Supp. 1022 (S.D.N.Y.1979) (same).
 
 
 32
 Appellant relied heavily in its brief and in oral argument before us on the method of apportionment of defense costs set forth in National Grange Mutual Insurance Co. v. Continental Casualty Insurance Co., 650 F.Supp. 1404 (S.D.N.Y.1986). There, National Grange Mutual Insurance Company ("National Grange"), an insurer of Beaver Smelting and Refining Corp. ("Beaver"), commenced an action against CNA Insurance Companies ("CNA"), a coinsurer of Beaver, after an action had been commenced against Beaver by the State of New York alleging violations of the state's environmental laws. National Grange moved for a declaratory judgment against CNA to require it to pay the legal expenses incurred in the defense of Beaver. The court held that CNA was required to defend Beaver under the general comprehensive policy. The court agreed with CNA that "each insurer [was] obligated to contribute, pro rata, in proportion to their respective undertaking toward legal fees and other expenses of litigation." National Grange Mutual Insurance Co., supra, 650 F.Supp. at 1413. The court stated that "[t]his appears to be correct under New York law." Id.
 
 
 33
 Appellant's reliance on National Grange appears to be misplaced. In National Grange, CNA issued three types of policies to Beaver: a general comprehensive policy, an umbrella policy and an environmental impairment liability policy. Appellant asserted that CNA's general comprehensive policy in National Grange contained the same "other insurance" clause as the three CGL policies in the instant case. Appellant stated in its reply brief, in response to American Employers' claim that the CNA policy did not contain such an identical "other insurance" clause, that the CNA policy in National Grange would be produced for our examination at oral argument. No such policy has been produced to date.
 
 
 34
 For aught that appears in the record before us, the policies in National Grange did not have "other insurance" clauses identical with those in the policies in J.P. Realty and in the instant case. The district court in National Grange appears never to have considered any "other insurance" provisions when it decided to apportion defense costs pro rata between CNA and National Grange.
 
 
 35
 We find National Grange to be inapposite for another reason. In National Grange, the court relied inter alia on Federal Insurance Co. v. Atlantic National Insurance Co., 25 N.Y.2d 71, 302 N.Y.S.2d 769, 250 N.E.2d 193 (1969), to support its conclusion that New York law appeared to be that each insurer was obligated to contribute, pro rata, in proportion to its policy limits. 650 F.Supp. at 1413 n. 37. In Federal Insurance Co., the passenger in a rental car was injured when that car collided with another car. The passenger commenced an action against the driver of the rental car as well as the owner of the rental car, Hertz Corp. ("Hertz"). The driver requested the insurer of his own automobile, Federal Insurance Company ("Federal") to defend the action. In turn, Federal requested Atlantic National Insurance Company ("Atlantic"), Hertz's insurer, to defend. Federal commenced an action against Atlantic for contribution toward the settlement and the costs of defending the action. The court, after determining that both insurers' policies were excess coverage policies, stated that the provisions cancelled each other out. Both policies were held to be primary. The court held that each company was obligated to share in the cost of the settlement and the defenses. Federal Insurance Co., supra, 25 N.Y.2d at 78-79, 302 N.Y.S.2d at 771, 250 N.E.2d at 196. The court also held that both insurance companies were required to contribute, pro rata, toward the costs of the settlement and legal fees. Unlike the "other insurance" clauses in the three CGL policies in the instant case and in J.P. Realty, however, Federal's insurance policy provided for pro rata apportionment of indemnity costs.
 
 
 36
 We hold that, to the extent that the district court in National Grange relied upon Federal Insurance Co. v. Atlantic National Insurance Co. in support of its conclusion regarding the New York law of apportionment in this area, that conclusion is of doubtful validity.
 
 V.
 
 37
 Federal also claims that under general principles of equity, the only proper method of apportioning defense costs is pro rata based on the policy limits. It argues that, since Liberty Mutual and American Employers each provided Cablevision with four times as much coverage as Federal did, fairness and equity require that those two insurers contribute a greater share of Cablevision's defense costs on a pro rata basis.
 
 
 38
 The First Circuit in Aviles v. Burgos, 783 F.2d 270 (1 Cir.1986), rejected a similar argument for pro rata contribution of liability for indemnity losses. There, the insurance policies contained the identical "other insurance" clauses as the three CGL policies in the instant case. The court held that, based on the language of the policies, the proper method of apportionment between the insurers should be in equal shares. The court stated "CIS [the insurer] took the risk that such an arrangement might not always be to its benefit when it included such language in the policy". Aviles, supra, 783 F.2d at 282. We agree.
 
 
 39
 We have not overlooked a decision of our Court last term which, at first blush, appears to have reached a result contrary to the result we reach today in the instant case. Continental Casualty Co. v. Aetna Casualty and Surety Co., 823 F.2d 708 (2 Cir.1987). There, Continental Casualty Company ("Continental") commenced a declaratory judgment action against Aetna Casualty and Surety Company ("Aetna") to determine the rights and liabilities regarding coverage for the insured who was involved in a motor vehicle accident. The policies of both Continental and Aetna were excess/umbrella policies containing "other insurance" clauses. These clauses, however, were not the same as the "other insurance" clauses in the three CGL policies in the instant case. The Court held that the two "other insurance" clauses conflicted with each other and that the excess clauses were "mutually repugnant." Continental Casualty Co., supra, 823 F.2d at 711. The Court applied Connecticut law and held that liability should be prorated between the insurers. Unlike Continental Casualty, the CGL policies in the instant case specifically provide for equal contribution. Continental Casualty clearly is distinguishable from the instant case.
 
 
 40
 We have examined carefully each of Federal's claims of error and we find that each is without merit.
 
 VI.
 To summarize:
 
 41
 We hold that Federal, American Employers and Liberty Mutual each had a separate duty to defend the insured, Cablevision; that the apportionment of the settlement amount among the three insurers in equal shares was proper; and that the district court correctly granted the cross-motions for summary judgment of American Employers and Liberty Mutual against Federal.
 
 
 42
 Affirmed.