The **OHIO CASUALTY INSURANCE COMPANY, Plaintiff/Counter–Defendant/Cross–Defendant/Appellant,**

v.

**UNIGARD INSURANCE COMPANY, Plaintiff/Intervenor/Cross–Claimant/Appellee,**

and

**West American Insurance Company, Plaintiff/Counter–Defendant/Cross–Defendant,**

v.

**Cloud Nine, a Utah corporation; EASY SEAT, a Utah corporation; Rodney Ford, a New York resident, individually; Blaine Ford, a Utah resident, individually; and Rex Haddock, a Utah resident, Defendants/Counter–Claimants.**

No. 08–4003.

United States Court of Appeals, Tenth Circuit.

April 28, 2009.

---

[*] The Honorable Kevin Thomas Duffy, Senior United States District Judge for the Southern District of New York, sitting by designation.

Barbara K. Berrett, Mark D. Taylor, Berrett & Assoc., L.C., Salt Lake City, UT, for Plaintiff /Counter–Defendant/Cross–Defendant/Appellant.

Ray R. Christensen, Rebecca L. Hill, Christensen & Jensen, Salt Lake City, UT, for Plaintiff/Intervenor/Cross–Claimant/Appellee.

Michael L. Ford, Salt Lake City, UT, for Defendants/Counter–Claimants.

Before HENRY, Chief Judge, and BRISCOE and LUCERO, Circuit Judges.

## ORDER CERTIFYING STATE LAW QUESTION

ROBERT H. HENRY, Chief Judge.

The Ohio Casualty Insurance Company filed this declaratory judgment action to determine its rights and obligations to defend or indemnify the defendants Cloud Nine, LLC, Easy Seat, Rodney Ford, Rex Haddock, and Blaine Ford ("the Cloud Nine defendants") as to claims asserted in *EdiZone, L.C., v. Cloud Nine, LLC et al.*, No. 1:04–CV–117, 2008 WL 2178021 (D.Utah May 23, 2008). Ohio Casualty also sought to determine the rights and obligations of Unigard Insurance Company with regard to the *EdiZone* suit. Ohio Casualty issued a commercial general liability policy to the Cloud Nine defendants for the period from June 10, 2001 to June 10, 2002, while Unigard insured the Cloud Nine defendants from December 12, 2002 through December 12, 2005.

The district court ruled that Ohio Casualty and Unigard both had a duty to defend the *EdiZone* case. Relying on the "equal shares" provision of the "other insurance" section of Ohio Casualty's policy, the district court also concluded that the two insurers should each pay fifty percent of the defense costs. Rec. vol. XIII, at 2110 (Order and Memorandum Decision, filed Nov. 14, 2006).

Ohio Casualty now argues that the "equal shares" provision does not apply to successive policies like Unigard's. As a result, Ohio Casualty contends, the defense costs in the *EdiZone* case should be divided by means of the "time on the risk" method set forth in the Utah Supreme Court's decision in *Sharon Steel Corp. v. Aetna Casualty & Surety Co.*, 931 P.2d 127, 140 (Utah 1997). Under that method, costs are divided by the relative percentage of time that each insurer (and the insured) bore the risk of loss.

In response, Unigard argues that the equal shares provision applies to both successive and concurrent policies. Thus, in its view, the district court properly held that Ohio Casualty and Unigard should share equally in the costs of defending the *EdiZone* case.

Because the disposition of this appeal turns on important and unsettled aspects of Utah law, we submit this request to the Utah Supreme Court to exercise its discretion to accept the following certified question of Utah law in accordance with Tenth Circuit Rule 27.1 and Utah Rule of Appellate Procedure 41:

> Should the defense costs in the *EdiZone* case be allocated between Ohio Casualty and Unigard under the "equal shares" method set forth in the "other insurance clause" of Ohio Casualty's policy, or, in the alternative, because the policies were issued for successive periods, should those defense costs be allocated using the time-on-risk method described in *Sharon Steel Corp. v. Aetna Casualty*

*& Surety Co.*, 931 P.2d 127, 140 (Utah 1997)?

The facts relevant to the determination of this certified question are set forth below.

## I. BACKGROUND

EdiZone is a product and technology developer that licensed patents and other intellectual property to Cloud Nine for the manufacture and sale of an elastometer gel technology and a product known as "Celastic" and "GellyComb."[1] In the federal case against the Cloud Nine defendants, EdiZone alleged that those defendants had breached a licensing agreement allowing the manufacture, use, and sale of its products. In its initial complaint, EdiZone asserted claims for (1) patent infringement; (2) breach of contract; (3) constructive fraud; (4) fraudulent non-disclosure; (5) trademark infringement in violation of 15 U.S.C. § 1114(6) common law trade name infringement and unfair competition; (7) deceptive trade practices in violation of Utah Code Ann. § 13–11a–3, part of the Utah Truth in Advertising Act; (8) misrepresentation and false designation of origin, in violation of 15 U.S.C. § 1125(a); and (9) conspiracy.

Ohio Casualty issued a commercial general liability insurance policy to the Cloud Nine defendants that provided coverage for "Personal and Advertising Injury Liability" in the following terms:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertis-

---

**1.** EdiZone's website reports that "[a] unique product evolved out of EdiZONE's work with elastomers and gels. Called Intelli–Gel ™ or Gellycomb ™, this soft elastomer waffle structure conforms gently to broad surfaces and easy penetration of sharp surfaces. This unique combination of characteristics has changed the world of cushioning and toys."

EdiZone reports that the Gellycomb products have been used by a foot products company and by a company that produces a pressure relief mattress overlay for critical care patients and a device to protect the heels of immobile patients against ulceration. *See* http://www.edizone.com.

ing injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

Aplt's App. vol. II, at 337.

The policy also stated that:

This insurance applies to:

"personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

*Id.*

Ohio Casualty's policy covered the period from June 10, 2001 to June 10, 2002, while Unigard insured Cloud Nine for the three-year period from December 12, 2002 to December 12, 2005. From June 10, 2002 to December 12, 2002, Cloud Nine did not have commercial liability insurance.

After EdiZone filed its lawsuit in the federal district court in Utah, the Cloud Nine defendants requested both Ohio Casualty and Unigard to provide a defense. Unigard agreed to defend, but Ohio Casualty refused. Ohio Casualty then filed this declaratory judgment action alleging that it had neither a duty to defend nor indemnify the Cloud Nine defendants.

Unigard intervened as a plaintiff. It first asserted that, like Ohio Casualty, it

did not have a duty to defend or indemnify the Cloud Nine defendants. In the alternative, Unigard asserted that, if it did have a duty to defend or indemnify, then Ohio Casualty had the same duty—because the policies are essentially identical.

The district court ruling at issue in this case concerns Unigard's motion for partial summary judgment. In that motion, Unigard argued that (a) Ohio Casualty had a duty to defend the *EdiZone* case; and (b) Ohio Casualty should share equally in paying defense costs.

The district court ruled in favor of Unigard on both issues. First, the court said, the *EdiZone* action alleged "an advertising injury" and, as a result, both Ohio Casualty and Unigard had a duty to defend the action. Second, the district court concluded, the two insurance companies should share equally in paying defense costs. Aplt's App. vol. XIII, at 2095.[2]

In support of the latter ruling, the district court relied on the "Other Insurance" provision of the Ohio Casualty policy, which stated:

**4. Other Insurance**

*If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows;*

**a. Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also

---

**2.** In the course of this declaratory judgment action, Ohio Casualty changed its position to some extent: it agreed to defend the Cloud Nine defendants under a reservation of rights, based on what it believed were materially new allegations in the Second Amended Complaint filed in the *EdiZone* action. Ohio Casualty subsequently acknowledged that it had a

duty to defend the *EdiZone* case from the filing of the Second Amended Complaint. Thus, with regard to Ohio Casualty, the district court was required to decide only whether that insurer had a duty to defend before the filing of that complaint. Rec. vol. XIII, at 2096.

primary. Then, we will share with all that other insurance by the method described in c. below.

. . . .

### c. Method of Sharing

*If all of the other insurance permits contribution by equal shares, we will follow this method also.* Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

*Id.* vol. II, at 342–43 (emphasis supplied); *see also* Rec. vol. III, at 604–05 (identical provision of Unigard's policies).

The district court also invoked the broad scope of an insurer's duty to defend under Utah law. In its view, "Ohio Casualty's suggested allocation method . . . essentially advocates the position that an insurer has a duty to defend only those claims covered by its insurance policy." *Id.* vol. XIII, at 2110 However, the court explained, "that proposition is directly contrary to Utah case law, which requires an insurer to defend covered and non-covered claims in the same lawsuit until the insurer can limit the suit to claims outside the policy." *Id.*

Following the district court's decision, Ohio Casualty and Unigard paid fifty percent of the defense costs of the *EdiZone* case, as directed by the district court. In July 2007, the two insurers reached a settlement in the underlying case with EdiZone. As a result of the settlement, EdiZone dismissed its claims against the Cloud Nine defendants, and the remaining issues in this declaratory judgment action became moot.

## II. DISCUSSION

Ohio Casualty now argues that the district court erred in relying upon the "other insurance" provision of the policies to conclude that the defense costs should be allocated equally between Ohio Casualty and Unigard. In its view, the "other insurance" provision only applies if there is other insurance "for a loss we cover." Here, during the period that Ohio Casualty provided insurance to Cloud Nine (June 10, 2001 to June 10, 2002), Unigard did not provide insurance to the Cloud Nine defendants. Because the "other insurance" provision does not apply, Ohio Casualty continues, defense costs should be allocated by use of the time-on-the-risk method adopted by the Utah Supreme Court in *Sharon Steel Corp.*, 931 P.2d at 140.

In response, Unigard defends the district court decision. Its argument turns on the policy's use of the phrase "[i]f other valid and collectible insurance is available to the insured for a loss we cover." Aplt's App. vol. II, at 342. It maintains that "[a] 'loss we cover' encompasses an isolated incident of injury/damage claim, triggering the circumstance of concurrent/overlapping coverage, and encompasses a continuing injury/damage claim caused by a tortious act continuing over a period of time, which spans and triggers successive policy periods. Therefore, the Other Insurance provision applies to both concurrent and successive policies." Aple's Br. at 13.

Ohio Casualty's argument is supported by courts and scholars who have concluded that other insurance clauses do not generally apply to successive polices. *See Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1078–79 (7th Cir.2004) (criticizing a district court's "highly questionable"

application of an other insurance clause to successive policies) (Illinois law); *St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 919 F.2d 235, 241 (4th Cir.1990) (stating that "[it] appears that the district court may have been incorrect in relying on the policies' 'other insurance' clauses to resolve [the proper allocation of insurers' responsibilities] .... [;] such clauses apply only when the coverage is concurrent. Where, as here, the policies['] periods did not overlap at all, such clauses are not applicable.") (North Carolina law); Douglas R. Richmond, *Issues and Problems in "Other Insurance," Multiple Insurance, and Self-Insurance*, 22 Pepp. L.Rev. 1373, 1376–77 (1995) (stating that the characterization of successive policies as "other insurance" is "seriously flawed" because "while successive policies might insure the same type of risk, they do not insure the same risk" and because "so generous a definition wrongly suggests that insurers might be liable for damages occurring outside their policy periods"); Michael G. Doherty, Comment, *Allocating Progressive Injury Liability Among Successive Insurance Policies*, 64 U. Chi. L.Rev. 257, 278 (1997) (stating that " '[o]ther insurance' clauses do not provide a solution to the allocation problem because they were not meant to. allocate liability among successive insurers"); 23 Erik Mills Holmes et al., Holmes's Appleman on Insurance 2nd § 145.4[C] (1996) (" 'Other insurance' refers only to two or more concurrent policies, which insure the same risk and the same interest, for the benefit of the same person, during the same period. However, 'other insurance' clauses are not intended to allocate liability among successive insurers because they do not insure the same risk and would unjustly make consecutive insurers liable for damages occurring outside their policy periods.").

However, other courts have disagreed, applying other insurance clauses to successive policies, as Unigard urges us to do here. For example, in *Federal Insurance Co. v. Cablevision Systems Development Co.*, 836 F.2d 54, 58 (2d Cir.1987), the Second Circuit held that, under New York law, "other insurance" clauses in successive policies "indicate[d] an intent that the contributions by the coinsurers to defense costs should be in equal amounts." Like the district court, the Second Circuit invoked the broad scope of an insurer's duty to defend: "[s]ince the insurers cannot defend 'part' of the antitrust claims against [the insured] in the underlying ... action, it is logical that insurers bear the costs of defense equally." *Id.* The Supreme Court of Minnesota has reached the same conclusion. *See Wooddale Builders, Inc., v. Maryland Cas. Co.*, 722 N.W.2d 283, 304 (Minn.2006) ("[W]hen the pro-rata-by-time-on-the-risk method applies to allocation of liability, and insurers participate in providing a defense to a common insured ... defense costs are apportioned equally among insurers whose policies are triggered.") (Minnesota law).

The Utah courts do not appear to have resolved the issue of whether other insurance provisions may be applied to successive policies. Although both Ohio Casualty and Unigard contend that *Sharon Steel* supports their position, that decision instructs courts apportioning defense costs among insurers "to apply equitable principles ... unless express policy language decrees the method of apportionment." 931 P.2d at 140. *Sharon Steel* does not offer guidance on how to interpret other insurance clauses in successive policies that provide for "contribution by equal shares" "[i]f other valid and collectible insurance is available to the insured for a loss we cover." Aplt's App. vol. II, at 15.

Accordingly, we conclude that the question posed is controlling in this proceeding. Certification of that question would further

the interests of comity and federalism by giving the Utah Supreme Court an opportunity to answer it in the first instance should it elect to do so under Utah R.App. P. 41.

The Clerk of this court shall transmit a copy of this certification order to counsel for all parties. The Clerk shall also forward, under the Tenth Circuit's official seal, a copy of this certification order and the briefs filed in this court to the Utah Supreme Court.

We greatly appreciate the consideration of this request. This appeal is ordered STAYED pending resolution of the certified question.[3]

---

**3.** We note that this appeal does *not* involve the question of how to apportion the ultimate costs of settlement in the *EdiZone* case. In-stead, it concerns only the method of apportioning the costs of defense.